**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE SCHOOL DISTRICT OF** | **:** | **CIVIL ACTION** |
| **PHILADELPHIA,** | **:** | |
| **Plaintiff,** | **:** | |
| | **:** | |
| **v.** | **:** | |
| | **:** | **NO. 23-0238** |
| **THE CITY OF PHILADELPHIA, THE** | **:** | |
| **CITY OF PHILADELPHIA** | **:** | |
| **DEPARTMENT OF PUBLIC HEALTH** | **:** | |
| **AND MANAGING DIRECTOR TUMAR** | **:** | |
| **ALEXANDER,** | **:** | |
| **Defendants.** | **:** | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Defendants, the City of Philadelphia, the City of Philadelphia Department of Public

Health (the "Department of Health"), and Managing Director Tumar Alexander (the "Managing

Director," collectively, "the City" or "Defendants"), by and through their undersigned counsel,

hereby submit this Memorandum of Law in support of their Motion to Dismiss the Complaint of

Plaintiff, the School District of Philadelphia (the "District"), pursuant to Federal Rule of Civil

Procedure 12(b)(6).

## I.      INTRODUCTION

The District's claims arise from Section 4-A-703 of the Philadelphia Code (the

"Ordinance"), which contains inspection requirements for basic property-related hazards, such as

fire, lead paint, and water safety, in school buildings owned or operated by an entity to which the

City provides substantial public funding.  While the District does not contest and has never

contested these longstanding requirements for other safety concerns such as fire safety and lead

paint, this suit challenges a 2022 amendment which added asbestos inspection requirements.

The City amended Section 4-A-703 to include asbestos inspection requirements because of

concerns over the presence of asbestos in such school buildings and "to enhance building safety

requirements for educational occupancies." Section 4-A-703 allows the District a six-month grace period for new best practices and sets forth a three-year timeline for the District to inspect all required facilities.

Notwithstanding the timelines incorporated in the Ordinance, the District has nevertheless advanced a number of unfounded and unripe constitutional challenges, alleging that Section 4-A-703: (1) is preempted by federal asbestos legislation; (2) violates the non-delegation doctrine; (3) violates the District's due process rights; and (4) is an impermissible regulation of public schools by the City.

None of the District's claims have merit. First, the District has failed to even allege what provisions of the federal law conflict with Section 4-A-703. Second, the non-delegation doctrine is not applicable to the City and Section 4-A-703 is well within state constitutional limits for the separation of powers. Third, the Ordinance cannot violate the District's due process rights because the Ordinance points to existing best practices and regulatory certification regimes, allows a six-month period after the Managing Director identifies additional best practices, and provides an appeal process if a certificate is refused after an inspection. Finally, the Ordinance, which was enacted for public health and safety concerns, is a permissible regulation of a public school building and not an impermissible regulation of public education.

For the reasons set forth more fully below, the District's claims fail as a matter of law and the Complaint should be dismissed with prejudice.

## II. RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Section 4-A-703 of the Philadelphia Administrative Code was first enacted in 2003 and was amended in January 2019 to require that each District school building submit a "Certificate of Special Inspection" (the "Certificate") from the City every year certifying that the building has been inspected for "fire, safety, electrical, lead paint, water quality, and all other property-related

hazards." (Compl. ¶ 36, ECF No. 1; Phila. Code § 4-A-703). The Certificate was to be obtained within the nine-month period immediately preceding the school year for which the Certificate would be valid. (*Id.*) In 2022, the City passed a bill amending Section 4-A-703 (the "Bill") to require the Certificate to include a certification of compliance with a new Section 4-A-703.2(4)€ (the "Ordinance"), which specifically addresses asbestos. (Compl. ¶ 37; Bill No. 210685-AA at 1 (approved June 1, 2022), attached as **Exhibit A**). The Ordinance was enacted to protect the health and safety of children attending District schools by "*enhanc[ing]* building safety requirements for educational occupancies." (Ex. A (emphasis added)). Section 4-A-703 now requires that "[t]he Department shall not issue a special certificate of inspection unless the building has been inspected for fire, safety, electrical, lead paint, water quality, *asbestos*, and all other property-related hazards" and that:

> the Health Department or a testing agency certified by the Pennsylvania Department of Labor and Industry has certified, within the previous three years and four months, that the building is in substantial compliance with the best practices for testing, remediation, abatement, cleaning, and management of asbestos, and other property-related hazards not otherwise regulated in this Section as identified by the Managing Director no less than six months prior to the issuance of the special certificate of inspection.

(Phila. Code § 4-A-703.2(4)(E) (emphasis added); Compl. ¶¶ 37–38). The Ordinance requires compliance in phases for the first three years, becoming effective on and after August 1, 2023, for one-third of District schools (approximately 100) and becoming effective for the remaining two-thirds of District schools on and after August 1, 2024, and August 1, 2025. (Ex. A § 2; Compl. ¶ 44). Thereafter, schools must be re-inspected every three years and four months. Phila. Code § 4-A-703.2(4)(E).

In its January 20, 2023 Complaint, the District brings a number of constitutional challenges to the Ordinance. First, the District alleges that the Ordinance is federally preempted by the Asbestos Hazard Emergency Response Act ("AHERA"), 15 U.S.C. §§ 2641 *et seq*.

3

(Count I). AHERA generally requires school districts to inspect their buildings for asbestos-containing building materials ("ACBMs") every three years and to document those inspections in writing. In the District's view, the Ordinance creates an "irreconcilable conflict" with its AHERA compliance program. Second, the District alleges that the Defendants have not been delegated the authority from the General Assembly to implement asbestos and environmental management procedures for the District (Count II). Third, the District brings a due process claim, alleging that the Ordinance is vague and ambiguous because it does not provide the District with adequate guidance to comply with the new standards contained therein (Count III). Finally, the District brings a claim for the unlawful regulation of public schools, alleging that 53 P.S. § 13219(a)(2) prevents the City from "regulating public education" and that the City's establishment of asbestos-related inspection requirements in the Ordinance is an impermissible regulation of public education (Count IV). The District has also sought a declaratory judgment (Count V) declaring that the Bill is unconstitutional, void, and unenforceable, as well as including a count seeking preliminary injunction (Count VI) enjoining the City from enforcement of the Ordinance, although the District has not, at this time, filed a motion for a preliminary injunction.

## III. LEGAL ARGUMENT

### A. Standard of Review

To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "All factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff," *Tria WS LLC v. Am. Auto. Ins. Co.*, 530 F. Supp. 3d 533, 537 (E.D. Pa. 2021) (quoting *N.J. Carpenters v. Tishman Constr. Corp. of N.J.*, 760 F.3d

297, 302 (3d Cir. 2014)), *appeal docketed at* No. 21-1741 (3d Cir. Apr. 16, 2021), but the Court

"may disregard any legal conclusions" in evaluating "whether the facts alleged in the complaint

are sufficient to show that the plaintiff has a 'plausible claim for relief,'" *Fowler v. UPMC*

*Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678–79). "When

deciding a motion to dismiss, courts may consider 'allegations contained in the complaint,

exhibits attached to the complaint and matters of public record,'" *Tria WS LLC*, 530 F. Supp. 3d

at 537 (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196

(3d Cir. 1993)), and "matters incorporated by reference or integral to the claim, items subject to

judicial notice, [and] items appearing in the record of the case," *id.* (quoting *Buck v. Hampton*

*Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)).

## B.     The District's Claims Against the City Should Be Dismissed

### 1.     The District Has Failed to State a Claim for Conflict Preemption

In Count I of the Complaint, the District alleges that the Ordinance impermissibly

conflicts with AHERA and is therefore preempted.  The District's claim fails as a matter of law

because nothing in AHERA would prevent the District from also complying with the City's

Ordinance—nor has the District alleged as much.

As an initial matter, the District's preemption claim fails because AHERA contains an

express "no preemption" provision and specifically contemplates that states might enact their

own legislation with respect to asbestos and the safety of school buildings.  AHERA provides in

relevant part that "[n]othing in this subchapter shall be construed, interpreted, or applied to

preempt, displace, or supplant any other State or Federal law, whether statutory or common."  15

U.S.C. § 2649(a).  AHERA also expressly allows states to establish more stringent requirements

than those contained in AHERA: "Nothing in this subchapter shall be construed or interpreted as

5

preempting a State from establishing any additional liability or more stringent requirements with respect to asbestos in school buildings within such State."[1] *Id.* § 2649(c).

Even if the Court were to conduct a conflict preemption analysis despite the above provisions, the District's claim fails. Conflict preemption occurs where "compliance with both federal and state regulations is a physical impossibility," or "where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Pa. Int'l Acad., LLC v. Fort LeBoeuf Sch. Dist.*, 725 F. App'x 91, 94–95 (3d Cir. 2018) (internal quotations omitted) (citing *Arizona v. United States*, 567 U.S. 387, 399 (2012); *Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132 (1963); and *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). The preemption analysis is governed by two principles:

> First, the purpose of Congress is the ultimate touchstone in every pre-emption case. Second, [i]n all pre-emption cases, and particularly in those in which Congress has legislated . . . in a field which the States have traditionally occupied . . . we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.

*Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal quotations and citations omitted). In determining whether state law presents an "obstacle" to the federal objectives, courts look to the expressly stated purpose of the federal law. *Farina v. Nokia, Inc.*, 625 F.3d 97, 124 (3d Cir. 2010).

The "expressly stated purposes" of AHERA and the Ordinance are not in conflict with one another. Both pieces of legislation seek to create safe, asbestos-free school buildings. The stated purposes of AHERA are as follows:

---

[1] The Ordinance is akin to a state regulation for purposes of AHERA. Municipalities, like Philadelphia, are "creations of the state" with those powers "expressly granted to them by the Constitution of the Commonwealth or by the General Assembly, and other authority implicitly necessary to carry into effect those express powers." *Robinson Twp. v. Commonwealth*, 83 A.3d 901, 977 (Pa. 2013) (cleaned up).

(1) to provide for the establishment of Federal regulations which require inspection for asbestos-containing material and implementation of appropriate response actions with respect to asbestos-containing material in the Nation's schools in a safe and complete manner;

(2) to mandate safe and complete periodic reinspection of school buildings following response actions, where appropriate; and

(3) to require the Administrator to conduct a study to find out the extent of the danger to human health posed by asbestos in public and commercial buildings and the means to respond to any such danger.

15 U.S.C. § 2641(b). Similarly, the stated purpose of the Ordinance is to "enhance building safety requirements for educational occupancies." Ex. A. There simply is no conflict.

To the extent the District bases its claim on regulations that the City has or may enact, as discussed above, AHERA expressly permits the City to enact regulations regarding inspections for asbestos in school buildings, and further, to enact regulations that might be more stringent than those contained in AHERA. Moreover, the District has failed to allege a single provision of the Ordinance that conflicts with any part of AHERA such that the Ordinance would be "an obstacle to the accomplishment and execution of the full purposes and objectives" of AHERA. *See Pa. Int'l Acad.*, 725 F. App'x at 95. Count I contains nothing more than the conclusory allegation that the Bill and the Ordinance "create irreconcilable conflicts with the District's AHERA compliance program" (Compl. ¶ 55). The District has not actually alleged any facts identifying the parts of AHERA with which the Ordinance conflicts. The District's "legal conclusions" may be disregarded and are insufficient to state a claim. *See Fowler*, 578 F.3d at 210–11 (citing *Iqbal*, 556 U.S. at 678–79).

The District's preemption claim must be dismissed because AHERA expressly contradicts the District's claim, because there is no conflict, and because the District has not alleged facts sufficient to support an inference, much less a conclusion, that the Ordinance conflicts with AHERA. Count I of the Complaint should be dismissed with prejudice.

2.    The District Has Failed to State a Claim for a Violation of the Non-Delegation Doctrine

In Count II, the District alleges that the City, the Department of Public Health, and the Managing Director have not been delegated the authority from the General Assembly to implement asbestos and environmental regulations. This claim fails because (1) the Ordinance at issue here is well within state constitutional and statutory restraints on a Home Rule City of the First Class and (2) in any event, the non-delegation doctrine is inapplicable to the issued raised by the District.

As an initial matter, the non-delegation doctrine is inapplicable to the City. Philadelphia is a Home Rule City which is expressly empowered by the Pennsylvania Constitution and the General Assembly to legislate matters of local concern with the force of law. *See Nutter v. Dougherty*, 938 A.2d 401, 411 (Pa. 2007); *see also* Pa. Const. art. IX § 2; 53 Pa. C.S. § 2961. "[U]nder the concept of home rule," a city may "legislate concerning municipal governance without express statutory warrant for each new ordinance, . . . limited only by its home rule charter, the Pennsylvania Constitution, and the General Assembly." *Nutter*, 938 A.2d at 411 (citation omitted); *see also* Pa. Const. art. IX § 2; 53 Pa. C.S. § 2961 (providing that a home rule municipality "may exercise any powers and perform any function not denied by the Constitution of Pennsylvania, by statute or by its home rule charter"). The City does not need an express statutory warrant for each new piece of legislation it enacts, and thus the City did not need a warrant from the General Assembly to enact the Ordinance and legislate with respect to asbestos in public school buildings. *See id.*

Accordingly, the District's non-delegation argument is inapplicable here. The non-delegation doctrine concerns the separation of powers and "forbids entities other than the legislative branch from exercising the 'legislative power,' as those entities do not have the power

to make law." *Wolf v. Scarnati*, 233 A.3d 679, 704 (Pa. 2020) (citation omitted), *superseded by constitutional amendment on other grounds as recognized in Corman v. Acting Sec'y of Pa. Dep't of Health*, 266 A.3d 452, 457–58 (Pa. 2021). There is no separation of powers concern here. Indeed, there is not even an allegation that the executive branch is exercising the authority of the legislative branch. Count II appears to be predicated on the idea that the state has not authorized the City to legislate about asbestos in school buildings, but even if that were the case (it is not), that does not form the basis of a non-delegation claim.

Count II's failure as a matter of law is underscored by claims that the District does *not* make. There is no claim that the City's non-asbestos-related efforts to address the health and safety in schools—about issues ranging from lead paint to fire safety—are impermissible. The entirety of the challenged Ordinance falls squarely within the authority of the Home Rule City of the First Class to regulate for public health and safety.

Even if nondelegation in the manner pleaded by the School District were applicable to the actions of City Council that are challenged here (it is not), the District's nondelegation claim fails because it clearly complies with set by Pennsylvania Courts for the delegation by the Commonwealth's Legislature and, therefore, the Ordinance cannot be said to impermissibly delegate authority to the Department of Health and the Managing Director. Indeed, this Court need not even reach the question of how or if the nondelegation doctrine applies to the actions of City Council because the Ordinance cannot be said to impermissibly delegate authority even under the District's claim and theory which is predicated on the nondelegation doctrine as applied to the Commonwealth's legislature,

Delegation, in the manner allegedly presented by the Ordinance, would be permissible where (1) the basic policy choices are still made by the Legislature; and (2) the legislation in

question contains adequate standards to guide and restrain the exercise of the delegated administrative functions. *City of Lancaster v. Pa. Pub. Util. Comm'n*, 284 A.3d 522, 528 (Pa. Commw. Ct. 2022) (citing *Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*, 161 A.3d 827, 833–34 (Pa. 2017)).[2] This "does not require that all of the details needed to administer a law be precisely or separately enumerated in the statute." *Id*. at 544; *see also William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 293 (Pa. 1975) (to constitute an adequate standard under the delegation doctrine, the standard itself need "not be definite or precise"). Moreover, the "standards that control a non-legislative party's exercise of rulemaking authority must be viewed in light of the task necessary to accomplish the [legislative body's] purpose." *Id*.

Any alleged delegation of authority by City Council to the Department of Public Health and the Managing Director that the District purports to challenge is clearly outlined in the Philadelphia Code and meets the requirements of the doctrine. The Bill expressly states the purpose of the Ordinance, which is to "enhance building safety requirements for educational occupancies." Ex. A. And, as to asbestos inspections, it provides specific guidance by requiring certification by "the Health Department or a testing agency certified by the Pennsylvania Department of Labor and Industry" within the previous three plus years based on "best practices for testing, remediation, abatement, cleaning, and management of asbestos." Phila. Code § 4-A-703.2(4)(E). The District has already pointed to the extensive practices present in AHERA. The Commonwealth has asbestos standards and an inspector certification process. 65 P.S. §§ 2101 *et seq.* And the City also certifies asbestos inspectors. Phila. Code § 6-604(2). The Ordinance

---

[2] *But see* David N. Schleicher & Roderick M. Hills, Jr., *Local Legislatures and Delegation*, Tex. L. Rev., forthcoming, at 5 (Feb. 23, 2023), https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4368382 (arguing that there is no "textual or doctrinal explanation for the origins and extent of limits on local legislative delegations," and that "courts should abandon the local [as opposed to the state-level] nondelegation doctrine").

reflects the policy choices of City Council and contains adequate standards and restraining the exercise of alleged delegated authority regarding asbestos inspections.

Further, any argument that the Ordinance provides insufficient guidance to the Department of Health and Managing Director for the promulgation of best practices for asbestos inspection also fails because both the purpose and the references to asbestos inspection regimes serve as a guide to the Department of Health and the Managing Director in developing the "best practices" referred to in the Ordinance. On top of this, the legislature provided specificity as to the "Facility Safety and Improvement Group," that is, to provide the Managing Director with advice regarding best practices and ensured that the Group is to include, among others, an expert on environmental testing and abatement. *See* Phila. Code § 4-A-703.2(4)(F). Thus, the system established by the Ordinance does not violate any doctrine.

Pennsylvania courts have held that an agency can set *specific* rules and regulations to effect *general* policy choices by the legislature. For example, the Pennsylvania General Assembly delegated authority to the Environmental Quality Board to regulate landfills under the Solid Waste Management Act, 35 P.S. §§ 6018.101 *et seq.*, and the Municipal Waste Management Planning, Recycling and Waste Reduction Act, 53 P.S. §§ 4000.101 *et seq. Eagle Envtl. II, L.P. v. Com., Dep't of Envtl. Prot.*, 884 A.2d 867 (Pa. 2005). The EQB promulgated regulations that required landfill operators to complete an application process demonstrating that the benefits of a landfill project outweighed potential environmental harms. 25 Pa. Code §§ 273.101, 288.101. A landfill operator challenged the Acts, arguing that they impermissibly delegated a basic policy choice from the General Assembly to the EQB in violation of the non-delegation doctrine because they did not provide primary standards for the EQB to adopt regulations. The Pennsylvania Supreme Court concluded that the Acts did not violate the non-

11

delegation doctrine because the General Assembly still made the basic policy decision to "protect the 'safety, health, welfare and property of the public'":

> The legislature made the basic policy decision that, although landfills potentially create significant dangers to the public and the environment, they are nonetheless a public necessity. Furthermore, the legislature made the basic policy decision to regulate the industry with certain purposes in mind and adopted the [Acts]. The legislature, however, did not set forth the specific rules and regulations to determine how to protect the environment or the public; instead it appropriately delegated those to the EQB. . . . [T]he [harms/benefits] regulation satisfies the EQB's duty to establish regulations that protect the "safety, health, welfare and property of the public" as well as the Commonwealth's natural resources from the "public health hazards, environmental pollution, and economic loss" that may result from improper and inadequate solid waste disposal while at the same time insuring the provision of solid waste disposal by private enterprise as needed by the public.

*Eagle Envtl.*, 884 A.2d at 880–81 (citing 35 P.S. § 6018.102; and 53 P.S. § 4000.102). In other words, that the stated purposes of the Acts were to protect the "safety, health, welfare and property of the public" and to protect the Commonwealth's natural resources from the "public health hazards, environmental pollution, and economic loss" was sufficient guidance to the EQB to be able develop regulations for permitting Pennsylvania landfills. Here, too, City Council has made the policy choice to "enhance building safety requirements for educational occupancies." Ex. A. Under Pennsylvania law, City Council has provided sufficient guidance for the Department of Health and the Managing Director to develop "best practices" to achieve City Council's policy goal. For these reasons as well, the District cannot allege a violation of the non-delegation doctrine and Count II of the Complaint should be dismissed with prejudice.

### 3. The District Has Failed to State a Claim for a Due Process Violation

In Count III of the Complaint, the District alleges that the Ordinance violates its due process rights because it is unlawfully vague, sets ambiguous standards regarding the District's management of asbestos because it does not define "best practices" for the management of asbestos, and provides the City with the power to determine which District buildings may be

open. Compl. ¶¶ 66–69. This facial challenge fails as a matter of law and, in addition, ignores the significant procedural protections provided under law in the event the City were to determine a school building had to be closed.

The Due Process Clause of the Fourteenth Amendment provides that no state "shall . . . deprive any person of life, liberty, or property, without due process of law." *Dailey v. City of Philadelphia*, 417 F. Supp. 3d 597, 616 (E.D. Pa. 2019), *aff'd*, 819 F. App'x 71 (3d Cir. 2020) (quoting U.S. Const. amend. XIV, § 1). To violate the Due Process Clause for vagueness, a law or regulation must "fail to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 631 (3d Cir. 2013) (citing *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982)).

There are two different "void for vagueness" challenges: facial or as-applied. *Id*. The District has alleged a facial challenge to the Ordinance. A party asserting a facial challenge to a regulation "must establish that no set of circumstances exists under which the [regulation] would be valid." *Dailey*, 417 F. Supp. 3d at 617 (internal quotations omitted) (citing *Heffner v. Murphy*, 745 F.3d 56, 65 (3d Cir. 2014)). This demanding standard renders a facial challenge "the most difficult challenge to mount successfully." *Id*. at 617 (internal quotations omitted) (citing *Heffner*, 745 F.3d at 65). The Supreme Court disfavors facial challenges because such claims: (1) "often rest on speculation"; (2) "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied"; and (3) "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a

manner consistent with the Constitution." *Id*. (internal quotations omitted) (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)). Indeed, just because a regulation may contain some ambiguities does not render it impermissibly vague. *CMR D.N. Corp.*, 703 F.3d at 631–32 (citing *Hoffman Estates,* 455 U.S. at 502). As the Third Circuit has held in the context of a zoning ordinance, a facial vagueness challenge would require that the ordinance be so vague as to be "no rule or standard at all." *Id*. (finding that the phrase "appropriate in scale, density, character and use for the surrounding community" in a Philadelphia zoning ordinance for commercial development on the Delaware River waterfront was not void for vagueness) (quoting *Boutilier v. Immigration & Naturalization Serv.,* 387 U.S. 118, 123 (1967)).

The Ordinance is clear and provides the District with sufficient guidance for compliance.

The Ordinance states that a Certificate will not issue unless:

> the Health Department or a testing agency certified by the Pennsylvania Department of Labor and Industry has certified, within the previous three (3) years and four (4) months, that the building is in substantial compliance with the *best practices* for testing, remediation, abatement, cleaning, and management of asbestos, and other property-related hazards not otherwise regulated in this Section *as identified by the Managing Director* no less than six (6) months prior to the issuance of the special certificate of inspection.

Phila. Code § 4-A-703.2(4)(E) (emphasis added). The District argues that this violates due process because "best practices" is not defined and therefore it is impossible for the District to be in compliance with the Ordinance. But the Ordinance points to existing best practices and regulatory certification regimes, and when the Managing Director promulgates new best practices, the Ordinance provides the District with a six-month period for compliance after those practices are identified. There are no current ambiguities regarding asbestos practices and the Ordinance's preference for regulations will not create future ambiguities that violate due process because the Ordinance provides the District with six months to address best practices identified

14

by the Managing Director along with a rolling timeline for the initial inspection of District

buildings under the Ordinance.

In addition, the District's facial challenge is a red-herring because there is an appeal

process provided to the District if the City, pursuant to the Ordinance, were to deny any school

building a Certificate. Just as it is not unconstitutionally vague on its face, it also cannot be said

to violate due process in an as-applied challenge. Depending on the reason for the denial, the

District may appeal to the Board of Building Standards or the Board of License and Inspection

Review ("BLIR"). The Philadelphia Code provides:

> *Any person who is directly aggrieved by the* issuance, transfer, renewal, *refusal*,
> suspension, revocation or cancellation *of any license* issued pursuant to this code
> and the technical codes (except licenses issued pursuant to the Property
> Maintenance Code); *by a refusal of permit* pursuant to this code and the technical
> codes; *or by any notice, order or other action by the code official as a result of any
> inspection* pursuant to this code and the technical codes, *shall have the right to
> appeal* to the appropriate technical board as set forth in Section A-802.1.

Phila. Code § 4-A-801.1 (emphasis added) (citing *id.* § 4-A-802.1, providing a table of the

specific technical appeal board for subject codes). And if the reason for the denial of the

Certificate does not fall within the ambit of the specified technical boards, the District may

appeal to the Board of License and Inspection Review. The Code further provides that:

> *Any person who has been denied a hearing before a technical board*; or *who is
> aggrieved by the* issuance, transfer, renewal, *refusal*, suspension, revocation or
> cancellation *of any City license which is not listed for appeal to a technical board* in
> Section A-801.1; or *who is aggrieved by a notice, order or other action of the
> department relative to this code* or the technical codes which is not listed for appeal
> to a technical board in Section A-801.1, *shall have the right to appeal to the Board
> of License and Inspection Review*.

Phila. Code § 4-A-802.1 (emphasis added). Thus, if the City denies a District building a

Certificate for non-compliance with the to-be-promulgated asbestos standards or any other

provision of Section 4-A-703, the District will receive all the process it is due through the

appeals process before a technical board or BLIR.

The District's facial due process challenge fails as a matter of law, and therefore, Count III of the Complaint should be dismissed.

### 4. The District Has Failed to State a Claim for the Unlawful Regulation of Public Schools

In Count IV, the District alleges that the Ordinance is an unlawful "regulation of public schools" pursuant to 53 P.S. § 13219(a)(2). But the Ordinance, which is intended to protect the health and safety of this City's public school children from the deleterious health effects of asbestos, does not regulate public education as defined by the Pennsylvania Supreme Court. Section 13219(a)(2) was intended to prohibit the City from regulating the quality of the education provided in public schools and not from regulating the safety of the school buildings where that education is provided.

The Pennsylvania Supreme Court has defined the parameters in which a municipality can enact legislation that may have an effect on public school buildings, and has explained what is and is not considered to be a "regulation of public schools," specifically examining the question: "Does the City of Philadelphia, under its Home Rule Charter and the Zoning Enabling Act, have the power to regulate by means of zoning ordinances the construction of public school buildings by the School District within the City of Philadelphia?" *See Sch. Dist. of Philadelphia v. Zoning Bd. of Adjustment, City of Philadelphia*, 207 A.2d 864, 865 (Pa. 1965). In *School District*, the district had intended on expanding one of its school buildings to accommodate additional students, but the proposed structure would not comply with existing zoning requirements enacted by the City, and thus the Department of Licenses and Inspections denied the District's application for construction permit. The District applied for a variance with the Zoning Board, which found that while the school building was a permitted use, it would violate other zoning criteria and that these violations would substantially increase congestion in public streets. The

District appealed to the Court of Common Pleas which concluded that the District was exempt

from all provisions of the City's zoning ordinances. The Pennsylvania Supreme Court granted

the appeal and reversed, finding that the *zoning ordinances, although they had an effect on*

*public school buildings, were not a prohibited regulation of public schools*.

In coming to this conclusion, the Court began by examining the history of the powers

granted to the City by the State Legislature:

> Since the City is a municipal corporation created by the state, it possesses only
> those powers specifically granted by the legislature . . . . In 1949 . . . the General
> Assembly passed the 'First Class City Home Rule Act' . . . 53 P.S. § 13101 *et seq.*,
> giving cities of the first class taking advantage of the act, subject to certain
> limitations, all powers and authority of local self-government, together with
> complete powers of legislation and administration relative to its municipal
> functions. The City of Philadelphia, pursuant to the Act of 1949 . . . adopted a
> Home Rule Charter on April 17, 1951, effective January 7, 1952. It was, therefore,
> empowered to legislate as to municipal functions, subject to certain limitations . . . .

*Sch. Dist.*, 207 A.2d at 866–67 (internal citations omitted). The Court noted that no city may

exercise powers related to the regulation of public schools. *Id*. at 867 (citing 53 P.S. § 13133).

Relying on this section, as the District does here, the District argued that the Legislature did not

intend the City to interfere with the construction of public school buildings and that such of

function is an integral part of the educational system, the sole administration of which is vested

in the District.

The Court disagreed with the District's interpretation of the "regulation of public

schools" and found that the imposition of zoning regulations, which are "enacted for the

protection of the health, safety and general welfare of the community," requiring off-street

parking to avoid traffic congestion, *were not* a regulation of public schools. *Id*. Critically, the

Court noted:

> *As we view the term "Regulating public schools," this deals more with the quality*
> *of public education than with the physical structures required to provide it*. The
> building of school buildings is but a necessary incident to the fulfillment of the

primary duty to educating the young. Moreover, zoning is peculiarly a local matter and the prohibition imposed on the City by the Act of 1949 against the exercise of powers contrary to, or in limitation of, other acts of the General Assembly applies only to substantive matters of state-wide concern. *We regard statewide interest, and thus the area protected from local interference by statute, to be centered in, for example, the number of hours that children must attend school and the types and emphasis of courses that shall be presented to them.* We see no inherent state-wide interest in the fact that certain school buildings, because of local problems of congestion, should be so situated that space is available for off-street parking, or even that, because of overcrowded conditions, each building should be of only a certain height, or that it should have a back yard of a certain depth. These are areas which the legislature did not intend to protect when it denied to cities the power to regulate public schools. In requiring off-street parking facilities, the City here is not "regulating public schools;" it is merely trying to enforce methods of combating the congestion of its public streets by means which it considers reasonably calculated to accomplish this result. That there is some additional cost to the educational system does not mean ipso facto that there is regulation of schools.

*Id.* at 867–68 (internal citations and quotations omitted) (emphasis added). Lastly, the Court

noted that the record contained no indication that the requirement of off-street parking would be

in effect a prohibition of the school building when those regulations were necessary for the

protection of the health, safety and welfare of the community. *Id.* at 185.

In the wake of the *School District* case, Pennsylvania courts have consistently found that

municipalities may regulate the "necessary incidents" of public education. *See Ryan v. City of*

*Philadelphia*, 465 A.2d 1092, 1093 (Pa. Commw. Ct. 1983) (citing *Sch. Dist.*, 417 Pa. 477)

(finding that the First Class City Public Education Home Rule Act "does not preclude the City

from regulating the necessary incidents of public education" and that funding school busing is

only regulating a "necessary incident" of public education, *i.e.*, the passage of children to and

from school); *Hazleton Area Sch. Dist. v. Zoning Hearing Bd.*, 778 A.2d 1208, 1213 (Pa. 2001)

(a municipality's prohibition of the non-school use of baseball fields on school property was

incidental and non-essential to the school's educational mission).

The Ordinance is a permissible regulation of a "necessary incident" of public education,

and is not an impermissible regulation of the public education itself. *See Sch. Dist.*, 207 A.2d at

18

867–68; *Ryan*, 465 A.2d at 1093; *Hazleton*, 778 A.2d at 1213. Since 2003, the Ordinance has

mandated various inspections in public school buildings, including fire safety, water quality,

electrical standards, and lead paint. The District has never challenged those inspections as an

impermissible regulation of public schools. Only now that the Ordinance has been amended to

provide for asbestos inspections does the District assert a regulation of public schools. But the

Ordinance in no way regulates the quality of the education provided in the District's schools. It

does not mandate the number of hours children must attend school or the courses they must take

or anything else that has to do with the actual provision of education to students. *See Sch. Dist.*,

207 A.2d at 868. As it has since its enactment in 2003, the Ordinance seeks to regulate the

physical structures in which children attend school. *See id*. at 867–68. Moreover, the Ordinance

was expressly "enacted for the protection of the health, safety and general welfare of the

community," *see id.* at 867, by "enhanc[ing] building safety requirements for educational

occupancies," (Ex. A) and contains no stated purpose to regulate public education.

The District's allegation that the Ordinance will risk the closure of 100 District school

buildings by the 2023–2024 school year with the remaining 200 additional school buildings

slated for closure by August 2025 (*see* Compl. ¶ 45), does not save their baseless claim. The

District does not allege that school buildings *will* close as a result of the Ordinance. Rather, the

District appears to suggest that either: (a) all 300 of its schools would fail inspection, or (b) the

District is incapable of inspecting any of its schools for asbestos, which it is already required to

do under federal law. *See* 15 U.S.C. §§ 2641 *et seq*. But neither of these suggestions warrant the

conclusion that the City is regulating education. In any event, as alleged, the District's

suggestion is no more than an unreasonable inference that this Court is not required to credit

even on a motion to dismiss. There is no factual allegation in the Complaint which supports the

District's conclusion that compliance with the Ordinance risks closure of all 300 of the District's school buildings and, again, health and safety regulations for buildings do not constitute an unlawful regulation of education.

The District has failed to sufficiently allege that the Ordinance is an unlawful regulation of public schools, and therefore, Count IV of the Complaint should be dismissed.

### 5. The District Is Not Entitled to a Declaratory Judgment

None of the District's claims are ripe and, therefore, it is not entitled to a judgment declaring that the Ordinance is unconstitutional, void, and unenforceable.

Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Declaratory Judgment Act is an "enabling act," which means that it confers discretion on the courts rather than an absolute right on a litigant. *Mills v. City of Philadelphia*, No. CV 21-273, 2022 WL 4389518, at \*6 (E.D. Pa. Sept. 22, 2022) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)). Declaratory judgments are "limited to cases and controversies in the constitutional sense." *Id*. (internal quotations omitted) (citing *Sherwin-Williams Company v. County of Delaware, Pennsylvania*, 968 F.3d 264, 269 (3d Cir. 2020)). And "[a]lthough there is no precise definition as to what constitutes a case or controversy, the facts alleged, under all circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. (internal quotations omitted) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

The ripeness doctrine is interrelated with the issue what constitutes a "case of actual controversy." *Id*. (citing *Wyatt, Virgin Islands, Inc. v. Gov't of V.I.*, 385 F.3d 801, 806 (3d Cir. 2004)). The Third Circuit has described the ripeness doctrine as follows:

> In determining whether a dispute has matured to a point to require judicial adjudication, courts must consider the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. A dispute is not ripe for judicial determination *if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all. Claims based merely upon assumed potential invasions of rights are not enough to warrant judicial intervention*.

*Id*. (emphasis added) (citing *Wyatt*, 385 F.3d at 806). To determine whether a claim is ripe, courts examine: (1) the adversity of the interest between the parties; (2) the conclusiveness of the declaratory judgment; and (3) the practical help or utility of the declaratory judgment. *Id*. (citing *Pic-A-State Pa. Inc. v. Reno*, 76 F.3d 1294, 1298 (3d Cir. 1996)). In order for a declaratory judgment action to be ripe, all three elements must be present. *Id*. (citing *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995)).

None of the District's claims are ripe and therefore there is no case or controversy between the District and the City. The Ordinance requires only inspections every three years and four months. Phila. Code § 4-A-703.2(4)(E). The Ordinance allows the Managing Director to identify best practices, but gives the District a six-month period before it must comply with the Managing Director's best practices. To date, no certificate has been issued or denied with respect to asbestos at any school building. To the extent that the Court is concerned with the enforcement of the ordinance, the District's claims are simply not ripe.

The District has failed to allege that it is entitled to a declaratory judgment and Count V of the Complaint should be dismissed with prejudice.

6.     The District Is Not Entitled to a Preliminary Injunction

The District's Complaint also includes a separate count for a preliminary injunction, even though the District has not filed a separate motion for preliminary injunction. The District is not entitled to separate injunctive relief without making a motion. *See, e.g.*, *James Luterbach Const. Co. v. Adamkus*, 781 F.2d 599, 603 & n.1 (7th Cir. 1986) (explaining that Fed. R. Civ. P. 65(a)(2) contemplates a separate motion for temporary relief and the plaintiff never separately moved for a preliminary injunction). And even if the District sought a preliminary injunction by way of their Complaint, injunctive relief is "'an extraordinary remedy, which should be granted only in limited circumstances.'" *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) (quoting *Frank's GMC Truck Center, Inc. v. G.M.C.*, 847 F.2d 100, 102 (3d Cir. 1988)). Such circumstances are not present here, which the City with address—and the Court can evaluate—if the District were to properly seek preliminary injunctive relief through motion practice.

Count VI of the Complaint should be dismissed with prejudice.

## C.     The Department of Public Health Is Not a Proper Defendant

The District names both the City of Philadelphia and the City of Philadelphia Department of Public Health as separate Defendants. City departments do not have a separate corporate existence from the City, so these are functionally the same party. *City of Philadelphia v. Glim*, 613 A.2d 613, 616 (Pa. Commw. Ct. 1992) (discussing 53 P.S. § 16257). In *Glim*, the claimant sued the City of Philadelphia and the Fire Department as separate defendants. The Court found that:

> Pursuant to . . . 53 P.S. § 16257, all suits against any department of the City must be brought in the name of the City itself because the departments of the City do not have an independent corporate existence. *Baldi v. City of Philadelphia,* 609 F. Supp. 162 (E.D. Pa. 1985); *see Matteo v. City of Philadelphia,* 99 Pa.Commonwealth Ct. 152, 512 A.2d 796 (1986), *petition for allowance of appeal*

*denied,* 514 Pa. 650, 524 A.2d 496 (1987) (the City and its employee-physician were sued for alleged negligent medical treatment provided at one of the City's health department offices, but the City's health department was not separately sued).

*Glim*, 613 A.2d at 616. Thus, the Department of Health does not have a separate corporate existence and should be dismissed from this action.

### D. The District Has Failed to State Any Claims Against Individual Defendant, Tumar Alexander

#### 1. Plaintiff Has Failed to Allege That Individual Defendant, Tumar Alexander, Was Personally Involved in Any Alleged Constitutional Violation

Plaintiff's claims individual claims against Mr. Alexander, the City Managing Director, should be dismissed as a matter of law because the Complaint is devoid of any allegation that he personally participated in any purported violation of Plaintiff's constitutional rights.

In the Third Circuit, a "defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable . . . and cannot be held responsible for a constitutional violation which he or she neither participate in nor approved." *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007); *see Sykes v. Carroll*, 477 F. App'x 861, 863 (3d Cir. 2012) (affirming grant of summary judgment in favor of an individual defendant where plaintiff failed to allege personal involvement). "Liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Therefore, to survive a motion to dismiss, a complaint must plead a defendant's personal involvement, which can be accomplished by alleging "the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct." *Chavarriago v. N.J. Dep't of Corrs.*, 806 F.3d 210, 222 (3d Cir. 2015). A plaintiff "must portray specific conduct by state officials which violates some constitutional right." *Id*. (internal citations and quotations omitted).

The District does not make a single allegation which explains the presence of the Managing Director in this suit. The Complaint is devoid of any allegation whatsoever that the Managing Director personally participated in or had any knowledge of any purported wrongful conduct with respect to the Ordinance. The only allegations against the Managing Director are that the Ordinance vests him with authority to identify "best practices" for the management of asbestos, but there are no allegations with respect to any specific actions taken by the Managing Director. The Managing Director has not yet identified any best practices and the Complaint contains no allegation that he has done so. Thus, as a matter of law, Mr. Alexander cannot be held liable.

2.  Individual Defendant, Tumar Alexander, Is Entitled to Qualified Immunity

Even assuming that the District had pled specific facts with respect to the Managing Director's personal involvement in an alleged constitutional violation, as a government official, he is also entitled to qualified immunity.

"[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010) (internal quotations omitted). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (internal quotations omitted). The court must ask whether the facts alleged show a violation of a constitutional right that was clearly established at the time of the violation. *Kedra v. Shroeter*, 876 F.3d 424, 434 (3d Cir. 2017). A right is clearly established if there is controlling authority in the jurisdiction or a robust "consensus of cases of persuasive authority." *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011). "[C]ourts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without

resolving the often more difficult question whether the purported right exists at all." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations omitted).

Here, it would be impossible to conclude that the Managing Director knowingly violated any clearly established constitutional right. Because, again, the District has not made any allegations with respect to specific actions taken by the Managing Director. Thus, the Court need not even consider whether there is any controlling case law or "robust consensus" of persuasive authority that would have put the Managing Director on notice that the certification requirements for public school building, which have been in place for years, are now unconstitutional because they include provisions related to asbestos. The District has not alleged any actions taken by Mr. Alexander and he is therefore entitled to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court dismiss with prejudice all claims against them in accordance with Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

Date: March 14, 2023

DILWORTH PAXSON LLP

By: */s/ Jerry R. DeSiderato*
Jerry R. DeSiderato
PA Id. No. 201097
Timothy J. Ford
Pa. Id. No. 325290
Danielle M. Karcich
Pa. Id. No. 312049
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Phone: (215) 575-7000
Fax: (215) 575-7200
jdesiderato@dilworthlaw.com
tford@dilworthlaw.com
dkarcich@dilworthlaw.com

CITY OF PHILADELPHIA
LAW DEPARTMENT

*/s/ Renee M. Garcia*

Renee M. Garcia
Chair, Litigation
Pa. Id. No. 315622
Benjamin H. Field
Chief Deputy City Solicitor
Pa. Id. No. 204569
Ryan B. Smith
Assistant City Solicitor
Pa. Id. No. 324643
One Parkway Building, 15th Floor
1515 Arch Street
Philadelphia, PA 19102
Tel. 215.683.5038
Fax 215.683.5299
Renee.Garcia@phila.gov
Benjamin.Field@phila.gov
Ryan.Smith@phila.gov

*Counsel for Defendants The City of Philadelphia, The City of Philadelphia Department of Public Health and Managing Director Tumar Alexander*