**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE SCHOOL OF PHILADELPHIA,<br>          *Plaintiff,*<br><br> v.<br><br>THE CITY OF PHILADELPHIA,<br>CITY OF PHILADELPHIA DEPARTMENT OF<br>PUBLIC HEALTH,<br>MANAGING DIRECTOR TUMAR<br>ALEXANDER,<br>                    *Defendants*. | Civil Action<br><br>No. 23-0238-WB |

<u>**MEMORANDUM IN SUPPORT OF PROPOSED DEFENDANT INTERVENORS'**</u>
<u>**MOTION TO INTERVENE**</u>

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................ 1

II.    FACTS ................................................................................................................. 2

   A.  The District has Aging Buildings that Need Repair ........................................... 2

   B.  Community Efforts to Promote School Safety from Environmental Hazards ................. 3

   C.  Proposed Intervenors Promote Philadelphia's Interest in Safe Public School Buildings . 3

       i.    Lift Every Voice Philly ................................................................. 4

       ii.   PennEnvironment .......................................................................... 5

       iii.  Laurie Mazer ................................................................................. 6

       iv.  Amara Rockar ............................................................................... 7

       v.    Sonia Rosen .................................................................................. 8

III.   ARGUMENT ...................................................................................................... 8

   A.  Proposed Intervenors Are Entitled to Intervene As a Matter of Right ............................ 8

       i.    The Motion to Intervene Is Timely. ........................................... 9

       ii.   Proposed Intervenors Have Sufficient Interests in the Underlying Litigation ..... 10

       iii.  Disposition of this Case May Impair Proposed Intervenors' Interests ............... 12

       iv.  Proposed Intervenors' Interests Are Not Adequately Represented. ................... 13

   B.  Alternatively, the Court Should Grant Permissive Intervention. .................................... 15

IV.   CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*Am. Farm Bureau Fed'n v. U.S. E.P.A.*,
 278 F.R.D. 98 (M.D. Pa. 2011) ................................................................................. 11

*Brody By & Through Sugzdinis v. Spang*,
 957 F.2d 1108 (3d Cir. 1992) .................................................................................... 12

*Cmty. Vocational Schs. of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*,
 2017 WL 1376298 (W.D. Pa. Apr. 17, 2017) ............................................................ 10

*Hoots v. Pennsylvania*,
 672 F.2d 1133 (3d Cir. 1982) ............................................................................... 15, 16

*Hyland v. Harrison*,
 2006 WL 288247 (D. Del. Feb. 7, 2006) ................................................................... 16

*In re Fine Paper Antitrust Litig.*,
 695 F.2d 494 (3d Cir. 1982) ........................................................................................ 9

*Kitzmiller v. Dover Area Sch. Dist.*,
 229 F.R.D. 463 (M.D. Pa. 2005) ............................................................................... 16

*Kleissler v. U.S. Forest Serv.*,
 157 F.3d 964 (3d Cir. 1998) ........................................................................... 10, 13, 14

*Koprowski v. Wistar Inst. of Anatomy & Biology*,
 1993 WL 332061 (E.D. Pa. Aug. 19, 1993) .............................................................. 15

*Liberty Mut. Ins. Co. v. Treesdale, Inc.*,
 419 F.3d 216 (3d Cir. 2005) ..................................................................................... 8, 9

*Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*,
 72 F.3d 361 (3d Cir. 1995) ........................................................................................ 12

*Page v. DTE Midstream, LLC*,
 2020 WL 5519052 (W.D. Pa. July 10, 2020) ............................................................ 16

*Pennsylvania v. President U.S. of Am.*,
 888 F.3d 52 (3d Cir. 2018) .......................................................................................... 9

*Coal. of Ariz./N.M. Ctys. for Stable Econ. Growth v. Dep't of Interior*,
 100 F.3d 837 (10th Cir. 1996) .............................................................................. 10, 11

*Town of Chester, N.Y. v. Laroe Ests., Inc.*,
  581 U.S. 433 (2017) .......................................................................... 9

*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972) .......................................................................... 13

*United States v. Territory of V.I.*,
  748 F.3d 514 (3d Cir. 2014) .......................................................... 13

*W. Goshen Sewer Auth. v. U.S. E.P.A.*,
  2013 WL 3914481 (E.D. Pa. July 30, 2013) ............................... 9, 10, 11

*Wallach v. Eaton Corp.*,
  837 F.3d 356 (3d Cir. 2016) .......................................................... 9

**Regulations**

Phila. Code tit. 4, § A-703.2 .......................................................... 1, 3, 14

Phila. Home Rule Charter § 3-204 ............................................... 14

Phila. Home Rule Charter § 9-201 ............................................... 14, 15

Phila. Home Rule Charter § 12-201 ............................................. 15

Phila. Home Rule Charter § 12-204 ............................................. 15

**Rules**

Fed. R. Civ. P. 24(a) ....................................................................... 1, 8, 9, 12

Fed. R. Civ. P. 24(b) ....................................................................... 1, 15, 16

**Other Authorities**

Joyce S. Wilkerson, President, School District Board of Education,
  *'Best Practices' Ordinance Would Put City in Conflict with Federal
  Environmental Law*, May 18, 2022,
  https://www.philasd.org/schoolboard/2022/05/18/best-practices-
  ordinance-would-put-city-in-conflict-with-federal-environmental-
  law/ .................................................................................................. 2

Kristen Graham, *Philly schools are suing the city over a law it says
  could keep buildings from opening in the fall*, Phila. Inquirer, Jan.
  20, 2023, https://www.inquirer.com/news/philadelphia-school-
  district-lawsuit-city-buildings-environment-20230120.html  ................... 14

## I.     INTRODUCTION

In 2021, after the School District of Philadelphia simultaneously failed to prevent students and staff from exposure to asbestos in school buildings and failed to alert parents about the conditions in their children's schools, the City of Philadelphia passed a straightforward piece of legislation to protect the health, welfare, and safety of Philadelphia children and school staff. Bill No. 210685-AA, codified at Phila. Code tit. 4, § A-703.2 ("Ordinance"). That law requires, first, that the City confirm District buildings are safe from exposed asbestos. *Id*. at § A-703.2(4)(E). Second, the law demands transparency, requiring the posting of inspections on a publicly available website within ten days. *Id.* at § A-703.2(4)(E)(.1). And third, the law provides for the empaneling of an advisory committee composed of a cross-section of stakeholder parties that can make non-binding recommendations to further improve the health and safety of School District buildings. *Id*. at § A-703.2(4)(F).

The School District of Philadelphia now seeks to invalidate that law, with a case theory rife with fatal flaws, from claims of federal preemption that ignore Congress's plain command to the contrary, to claims of state preemption that are irreconcilable with decades of Supreme Court of Pennsylvania precedent. *See* Defendants' Motion to Dismiss, ECF 22; Ex. F, Proposed Intervenors' Answer.

Proposed Intervenors are groups and parents who have long fought for safe, healthy Philadelphia schools, have encountered roadblocks from the District when seeking basic information about the conditions within their children's schools, and have, in one case, helped advocate for the passage of the very law at issue. They have a unique, timely raised, vested interest in ensuring the School District's efforts are defeated, and that the Ordinance is upheld. Accordingly, they seek intervention under Rule 24(a)(2) and 24(b) of the Rules of Civil

Procedure.

## II.   FACTS

### A.   The District has Aging Buildings that Need Repair

Situated in the poorest big city in America, the School District of Philadelphia ("District") has many aging school buildings that are badly in need of repair and riddled with environmental hazards, including lead paint, lead in drinking water, and exposed asbestos. *See* Complaint ¶15; Ex A., Decl. of Shanée Garner, ¶ 10. More than 40 of the District's 300 buildings are over 100 years old, and the District has "suffered from decades of systemic underfunding," with the result that "only a small percentage of the District's operating budget is available to be allocated for maintaining and improving the facilities and utilities of the District's aging school buildings." Complaint ¶¶ 14, 17, 19.

The District has compounded the problem of unsafe buildings by refusing to disclose the timing and results of its building inspections for environmental hazards. For example, on multiple occasions the District has deemed a school building safe, only to suddenly close it for remediation after testing revealed exposed asbestos. *See* Ex. A, Garner Decl. ¶¶ 13-16 (describing examples of school building closures from 2019 to present); Ex. E, Decl. of Sonia Rosen, ¶¶ 5, 7, 13, 16, 19 (discussing her first-hand experience of the District's lack of transparency and delay addressing the presence of exposed asbestos in her children's school building and the eventual removal of middle school students from the school building).[1] In fact, just while this case has been pending, the District has had to abruptly close two schools for asbestos remediation. *See* Ex. A, Garner Decl.

---

[1] *See also* Joyce S. Wilkerson, President, School District Board of Education, *'Best Practices' Ordinance Would Put City in Conflict with Federal Environmental Law*, May 18, 2022, *available at* https://www.philasd.org/schoolboard/2022/05/18/best-practices-ordinance-would-put-city-in-conflict-with-environmental-law/ ("We know this proposal comes from a sincere place of concern for our school children and staff, and understandable frustration that progress is not being made faster in resolving all environmental concerns in our buildings.").

¶ 13. And in one of the instances, the Superintendent has admitted that the District knew of the asbestos for two years without alerting students or staff, engaging in remediation, or closing the building. *Id.* ¶ 13, n.2.

###### B.    Community Efforts to Promote School Safety from Environmental Hazards

Facing the self-explanatory need to protect children from environmental dangers in their schools, the City of Philadelphia has taken action, amending the Philadelphia Building Construction and Occupancy Code to add building safety requirements for educational occupancies, including in 2017 for lead in drinking water, and in 2019 for lead paint inspections and remediation. Phila. Code § A-703.2(4)(B),(D); *see also* Ex. B, Decl. of David Masur, ¶¶ 7-8; Ex. C, Decl. of Laurie Mazer, ¶ 7.

Those efforts continued with the Ordinance at issue here. Specifically, the challenged Ordinance requires that the:

> Health Department or a testing agency certified by the Pennsylvania Department of Labor and Industry has certified, within the previous three (3) years and four (4) months, that the building is in substantial compliance with the best practices for testing, remediation, abatement, cleaning, and management of asbestos, and other property-related hazards not otherwise regulated in this Section as identified by the Managing Director no less than six (6) months prior to the issuance of the special certificate of inspection.

Phila. Code tit. 4, § A-703.2(4)(E). The Ordinance also mandates that the District post the results of asbestos testing to a generally available website within ten days of receipt of the results. *Id.* at § A-703.2(4)(E)(.1). Finally, it also provides for the eventual empaneling of an advisory committee that can make recommendations for best practices for building safety, but which has no authority to create any inspection regime, nor to close schools. *Id.* at § A-703.2(4)(F).

###### C.    Proposed Intervenors Promote Philadelphia's Interest in Safe Public School Buildings

Proposed Intervenors have been fighting against dangerous school conditions on behalf of

their own children or their members' children for years. Along the way, the District has continuously erected obstacles and refused to openly communicate with them about the conditions and safety of school buildings.

### i. Lift Every Voice Philly

Proposed Intervenor Lift Every Voice Philly is a member-based, Black-led organization of parents and community organizers committed to transforming Philadelphia schools by advancing racial, economic, and education justice. *See* Ex. A, Garner Decl. ¶¶ 6-7. Lift Every Voice has a strong interest in the enforcement of the Ordinance because its members are deeply concerned about District school safety. *Id*. ¶ 8. Many members have children who attend aging schools, including Bryant, Houston, and Lea Elementary. *Id*. ¶ 10.  This gives them particular concerns about conditions such as lead paint, lead in water, and asbestos, especially for the members' children who have chronic health conditions, such as asthma. *Id*. The group was founded in part because the District has often ignored low-income Black parents' calls for building safety, while more powerful and privileged parents receive District attention and action. *Id.* ¶¶ 12-16.

In addition, the Ordinance's requirement that the District publicly post inspection results within ten days is aligned with Lift Every Voice's core concern for District transparency and responsiveness to parents. *Id*. ¶ 17. This is of great concern as the District has repeatedly shut out Lift Every Voice's members from decisions regarding their children's educations. *Id*. ¶ 9. The District has limited these parent members' access to basic information, such as the conditions of their children's school buildings. *Id*. Thus, if the Ordinance is overturned, members of Lift Every Voice will lose one of the few tools available for learning about school building conditions.

4

### ii. PennEnvironment

PennEnvironment is a statewide, citizen-based environmental advocacy organization with approximately 800 dues-paying members residing in Philadelphia, many of whom are parents of children attending District schools. *See* Ex. B, Masur Decl. ¶ 4. PennEnvironment has been a consistent advocate for safe and healthy schools in Philadelphia. *Id*. ¶ 5. It is one of the founding members and leaders of the Philly Healthy Schools Initiative, which has been instrumental in identifying and proposing solutions to health risks affecting schools and students. *Id.*. PennEnvironment believes in the importance of healthy and safe school buildings and dedicates its staff time, office space, and financial resources to aid in the efforts of the Philly Healthy Schools Initiative. *Id.*

Prior to passage of the Ordinance, PennEnvironment tried to work collaboratively with the District to combat the problem of asbestos in school buildings, but District officials from the superintendent down resisted or ignored PennEnvironment's efforts. *Id.* ¶ 12. In addition, PennEnvironment strongly advocated for the passage of the Ordinance challenged here, including consulting frequently with Councilmember Derek Green and members of the task force he convened to address this issue, to review drafts of the Ordinance, and to provide feedback. *Id.* ¶ 13. Thus, PennEnvironment has an interest in defending the Ordinance that it helped to pass, and which directly benefits its members.

Moreover, the arguments advanced by the District in this litigation threaten the City's ability to regulate school-based hazards more broadly. *See, e.g.*, Complaint ¶ 76 (arguing Philadelphia cannot regulate school building safety because "[i]t is the District's—not the City's— responsibility to establish suitable physical school buildings spaces for its students."). If the District were to prevail on this argument, the lead-in-water and lead paint provisions that

PennEnvironment has advocated for would be similarly vulnerable.

### iii. Laurie Mazer

Laurie Mazer is a parent of two children who attend Fanny Jackson Coppin School, sat on the Coppin School's Advisory Committee, is a leader in Parents United for Public Education, and is a member of the steering committee of the Philadelphia Healthy Schools Initiative. Ex. C, Laurie Mazer Decl., ¶¶ 3-4. She has been engaged in advocacy around both lead paint and asbestos issues in Philadelphia schools. *Id*. ¶¶ 5, 7. And, like her fellow parent Intervenors, she has faced the District's unwillingness to make information regarding school building conditions easily accessible for parents. *Id*. ¶ 5.

Ms. Mazer, along with another parent from Parents United, has had to resort to filing Right to Know requests to learn basic information about asbestos in Philadelphia schools. *Id*. ¶ 8. The District created many barriers to those seemingly basic requests, even contending that AHERA documents were not subject to Pennsylvania's open records law. *Id*. Ms. Mazer and her colleague were eventually given access to the District's AHERA library to review the documents requested, subject to certain conditions. *Id*. ¶ 9. The District permitted the review of the documents only in person, on a weekday during business hours, at the District's headquarters, where District officials initially told them they could not so much as take photos of documents, as if they were state secrets rather than information about the safety of public schools. *Id.* ¶¶ 9-10.

As a parent who has spent considerable time working to improve District school conditions, Ms. Mazer has a vested interested in the legality of the challenged Ordinance. *Id*. ¶ 5. The Ordinance helps make school buildings safe, and its publication requirement helps make previously difficult-to-obtain information readily accessible to her and to other District parents.

### iv.  Amara Rockar

Amara Rockar is a parent of two children in the Henry C. Lea School in West Philadelphia. Ex. D, Decl. of Amara Rockar, ¶ 3. Ms. Rockar, who spent months trying to learn about the safety of her children's school, knows firsthand the value of transparent information and the types of obstacles the District erects to prevent parents from accessing information.

Specifically, in 2021, Ms. Rockar found AHERA reports from 2018-2019 indicating that there was asbestos containing material at Lea, but could not find any updated reports. *Id*. ¶ 7. In an effort to understand whether the District had completed new AHERA inspections in her children's school and, if so, what the results were, Ms. Rockar was forced to submit five Right-to-Know requests, attend two Board of Education meetings, communicate with various District employees, and visit the AHERA library twice to review documents. *Id*. ¶ 4. She received confusing and conflicting information at every step of the way, from all levels of the District, including the Superintendent himself. *Id*. ¶¶ 8-15. Although ultimately the District conducted testing at Lea and detected no asbestos, Ms. Rockar does not believe that "it should have taken four months of this level of demanding and pushing to receive this information." *Id*. ¶ 17.

Throughout her attempts to secure information about the safety of her school, the District made Ms. Rockar feel that she was being "unreasonable and irrational." *Id*. ¶ 19. Yet the reality of the danger that she was trying to avoid – and the danger when only the loudest and pushiest parents are able to secure basic information about the safety of schools – was illustrated by the recent revelation that the District knew about asbestos in another of its schools for at least two years and did nothing. *Id*. Given her personal experience, Ms. Rockar has an interest in ensuring that the District is accountable and transparent. Overturning the Ordinance would undermine the transparency that she feels she and other parents deserve. *Id*. ¶ 20.

### v.  Sonia Rosen

Finally, Sonia Rosen's two children attend the Science Leadership Academy at Beeber ("SLA Beeber") where she was an active member of SLA Beeber's Home and School Association between Fall 2020 and Winter 2022. Ex E, Decl. of Sonia Rosen, ¶¶ 3, 5. She "experienced firsthand the District's mishandling" of renovations at SLA Beeber, including a "failed school opening for the 2021/2022 school year as a result of District inactions and failure to inform parents of safety issues in the school building, including exposed asbestos." *Id.* ¶ 5. When she and other parents repeatedly expressed concerns and asked the District about asbestos remediation, the District told her that remediation was complete but refused to provide reports or evidence or to conduct testing. *Id.* ¶¶ 7-13.

Only following a large rally attended by the press, which Ms. Rosen helped plan, did the District admit that the school was not safe and agree to move the middle school students to a new building and agree to provide written documentation of air quality testing results. *Id.* ¶¶ 15-17. Her experience has taught her that "the School District cannot be trusted to provide information about asbestos in the school buildings unless they are legally required to do so." *Id.* ¶ 20. Ms. Rosen has a strong interest in the enforcement of the challenged law, as she is a concerned parent who has dedicated countless hours to advocating for increased school safety and transparency as a result of the District's failure at her children's school.

### III.  ARGUMENT

#### A.  Proposed Intervenors Are Entitled to Intervene As a Matter of Right.

A proposed intervenor is entitled to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) upon establishing: "(1) a timely  application for leave to intervene, (2) a sufficient interest in the underlying litigation, (3) a threat that the interest will be impaired or

affected by the disposition of the underlying action, and (4) that the existing parties to the action do not adequately represent [their] interests." *Liberty Mut. Ins. Co. v. Treasdale, Inc.*, 419 F.3d 216, 220 (3d Cir. 2005) (internal citation omitted).[2]  Proposed Intervenors satisfy each of these requirements, and the Court should grant intervention.

### i.  The Motion to Intervene Is Timely.

In determining whether a motion to intervene is timely, courts consider three factors: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir. 2016) (internal citation omitted). Ultimately, "[t]he timeliness of a motion to intervene is determined from all the circumstances" and is in the court's "sound discretion." *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982) (internal citation omitted).

This matter is at an early stage, with the City of Philadelphia filing a motion to dismiss just two days ago, and with discovery stayed. Moreover, in the interests of judicial economy and preventing delay, Proposed Intervenors do not propose to file a duplicative motion to dismiss that would require a response should the Court grant the motion. Rather, they seek to simply join the City's motion in full, and have attached a proposed answer should that motion be denied. *See* Ex F, Proposed Intervenors' Answer.

Under such circumstances, intervention is timely, does not impede the advancement of the action, and does not otherwise prejudice the parties under Rule 24. *See, e.g.*, *W. Goshen Sewer Auth. v. U.S. E.P.A.*, No. 12-cv-5353, 2013 WL 3914481, at *3 (E.D. Pa. July 30, 2013) (Restrepo, J.) (no delay where "little discovery has taken place and [the defendant] has not yet

---

[2] Intervenors move to intervene as defendants and seek the same relief as the City, so need not demonstrate Article III standing. *See Town of Chester, N.Y. v. Laroe Ests., Inc.,* 581 U.S. 433, 439 (2017); *Pennsylvania v. President U.S. of Am.*, 888 F.3d 52, 57 n.2 (3d Cir. 2018).

needed to respond to [the plaintiff's] motion to dismiss two counts of the complaint"); *Cmty. Vocational Schs. of Pittsburgh, Inc. v. Mildon Bus Lines, Inc.*, No. 09-cv-1572, 2017 WL 1376298, at *5 (W.D. Pa. Apr. 17, 2017) (motion to intervene timely where "discovery is not yet closed").

### ii. Proposed Intervenors Have Sufficient Interests in the Underlying Litigation.

To justify intervention as of right, an intervenor must demonstrate that its interest is "significantly protectable." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998) (internal citation omitted). That is, it must demonstrate its interest is "specific to [it], is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Id.* at 972. "[T]he polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote." *Id.* Moreover, "[t]he standard is a flexible, case specific one, particularly for environmental cases such as this." *W. Goshen Sewer Auth.*, 2013 WL 3914481, at *4 (citing *Kleissler*, 157 F.3d at 971).

Proposed Intervenors have a significantly protectable interest in defending the regulation of environmental hazards in public school buildings. From an organization that advocated for the passage of the law and an organization committed to improving District transparency and school conditions, to parents of Philadelphia school children who have each personally struggled to obtain information about asbestos in District schools, Proposed Intervenors represent the individuals and communities who will directly benefit from the Ordinance and who stand to lose if the Ordinance is overturned. Courts routinely grant intervention in such circumstances. *See, e.g.*, *Kleissler*, 157 F.3d at 971 (recognizing right of timber contractors, municipalities, and school districts to intervene in litigation brought by an environmental public interest group to enjoin logging activities because their interests could be threatened by suit); *Coal. of Ariz./N.M. Ctys. for Stable*

*Econ. Growth v. Dep't of Interior*, 100 F.3d 837 (10th Cir. 1996) (allowing wildlife photographer who had been instrumental to the decision to protect species under the Endangered Species Act to intervene to defend against a lawsuit seeking to rescind that protection); *W. Goshen Sewer Auth.*, 2013 WL 3914481, at *2, *7 (allowing environmental advocacy group whose members were impacted by pollution to intervene in suit challenging EPA's regulations); *Am. Farm Bureau Fed'n v. U.S. E.P.A.*, 278 F.R.D. 98, 106-11 (M.D. Pa. 2011) (granting intervention as of right to environmental groups seeking to oppose a challenge to EPA water quality standards).

In addition, Proposed Intervenors Lift Every Voice and PennEnvironment have a protectable interest in efforts to defend the Ordinance because such efforts go to the core of their work. Lift Every Voice, as a collective group of Black parents in Philadelphia School District schools, has at its core a mission to combat unsafe school conditions. Ex. A, Garner Decl. ¶¶ 6-8. PennEnvironment has spent time and resources ensuring schools are healthy and protected from dangerous conditions. As part of this effort, PennEnvironment created the Philly Healthy Schools Initiative, communicated with the District, published reports, educated the public about the issue, and consulted with the City Council taskforce that preceded this law. Ex. B, Masur Decl. ¶¶ 5, 6, 10, 12, 13.

The three individual parent Proposed Intervenors also have a significantly protectable interest. Two of the parents, Ms. Rosen and Ms. Rockar, have children who attend schools where asbestos-containing materials have been found. Ex. D, Rockar Decl. ¶¶ 3, 7; Ex. E, Rosen Decl. ¶¶ 3, 7, 13. Moreover, all three of them faced roadblocks from the District in obtaining information on the conditions in their children's schools. Ex. C, Mazer Decl. ¶¶ 8-10; Ex. D, Rockar Decl. ¶¶ 4, 8-15; Ex. E, Rosen Decl. ¶¶ 9, 12-13. Informed by these experiences and their shared mistrust

of the District, each has a vested interest in improved testing and transparency, which the challenged Ordinance provides.

Because the Ordinance's purpose dovetails with the missions of these organizations, the efforts that parents and their members have expended to keep schools safe, and because they would be harmed should the Ordinance be overturned, Proposed Intervenors have sufficient interests in this litigation.

### iii.   Disposition of this Case May Impair Proposed Intervenors' Interests.

"In order to meet the requirements of Rule 24(a)(2), proposed intervenors must also demonstrate that their interest *might* become affected or impaired, as a practical matter, by the disposition of the action in their absence." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 368 (3d Cir. 1995) (internal citation omitted) (emphasis in original). "It is not sufficient that the claim be incidentally affected; rather, there must be a tangible threat to the applicant's legal interest." *Brody By & Through Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992) (internal citation omitted). The inquiry focuses on the practical effects of the litigation, and the court "may consider any significant legal effect on the applicant's interest." *Id.* at 1122 (internal citation omitted).

In its challenge, the District seeks injunctive and declaratory relief that poses a tangible threat to Proposed Intervenors' interests in safe and healthy schools. Invalidating the Ordinance, as the District requests, would significantly undermine Proposed Intervenors' missions, numerous hours of work and expenditure of resources, and their children's and members' safety and access to information. *See* Ex. A, Garner Decl. ¶¶ 8, 17; Ex. B, Masur Decl. ¶¶ 10, 12, 13; Ex. C, Mazer Decl. ¶¶ 5, 8-13; Ex. D, Rockar Decl. ¶¶ 4, 7-8, 10-12, 15-16; Ex. E, Rosen Decl. ¶¶ 4-5, 9-17. Moreover, enjoining the Ordinance would leave parents to again fend for themselves in order to

get a coherent, clear, and consistent response from District staff regarding the hazards that might be present in their children's schools. *See e.g.* Ex. C, Mazer Decl. ¶ 9-10 (describing "fighting through . . . repeated roadblocks" in her attempts to obtain information); Ex. D, Rockar Decl. ¶ 18 ("An interested party should not have to go all the way to 440 N. Broad Street, during a work day, to review documents related to asbestos in school buildings."); Ex. E, Rosen Decl. ¶ 9 (stating that the District was "evasive" and refused to provide any documentation in response to parents' repeated requests for information about school building safety). And for PennEnvironment, a court decision overturning the Ordinance could threaten the validity of other regulations it was instrumental in passing, including those relating to lead in drinking water and lead paint in schools. Ex. B, Masur Decl. ¶¶ 6-8. These are the same interests shared by Lift Every Voice. Ex. A, Garner Decl. ¶¶ 10, 17.

### iv.  Proposed Intervenors' Interests Are Not Adequately Represented.

Proposed intervenors have a "minimal" burden of demonstrating that existing parties in the litigation do not adequately represent their interests. *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). It is sufficient to show that "representation of [the] interest *may* be inadequate." *Id.* (emphasis added) (internal quotation marks omitted). A proposed intervenor need show only that "although [its] interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote [them] proper attention," *United States v. Territory of V.I.*, 748 F.3d 514, 520 (3d Cir. 2014) (internal quotation marks omitted).

And while there is a general presumption that a government entity is an adequate representative, "when an agency's views are necessarily colored by its view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it, the burden is comparatively light." *Kleissler*, 157 F.3d at 972.

Proposed Intervenors meet this test. For example, the City of Philadelphia has a generalized interest in—and has thus far admirably defended—its validly adopted laws. But "government represents numerous complex and conflicting interests in matters of this nature" and "[t]he straightforward . . . interests asserted by intervenors here may become lost in the thicket of sometimes inconsistent governmental policies." *Id.* at 973-74. Proposed Intervenors, as parents of children attending school each day in buildings across the city, have a focused, direct, and narrower interest in ensuring that those buildings are safe and habitable, with promptly accessible information about their conditions.

Practical experience with this Ordinance demonstrates how the City's interests may diverge from Proposed Intervenors', and why there is "a reasonable doubt whether the" City will "adequately represent [their] concerns." *See id.* at 967. For example, the City has neither empaneled the advisory committee provided for by the Ordinance nor enforced the Ordinance as to any public school building. Complaint ¶¶ 40, 44. Similarly, the Managing Director has yet to identify "best practices," thereby effectively delaying implementation of the law for at least one additional school year. *See* Phila. Code § A-703.2(4)(E) (requiring six months advance notice prior to an inspection regime). Accordingly, while the City is defending its power to enact this case, it is doing so after (as of yet) taking no concrete steps to actually take steps to implement it.

In fact, the current President of the School Board has aptly stated that this lawsuit is akin to a "family disagreement."[3] Indeed, all of this is occurring against the background fact that both parties' decisionmakers can be removed from their positions should the single public official who appointed them—the Mayor of Philadelphia—so desire. *See* Phila. Home Rule Charter §§ 3-204;

---

[3] Kristen Graham, *Philly schools are suing the city over a law it says could keep buildings from opening in the fall*, Phila. Inquirer, Jan. 20, 2023, https://www.inquirer.com/news/philadelphia-school-district-lawsuit-city-buildings-environment-20230120.html.

9-201 (the Mayor appoints and may fire the Managing Director); *id*. at §§ 12-201; 12-204 (the Mayor appoints the members of the Board of Education, with advice and consent of a majority of all members of City Counsel, and the Board members "serve at the pleasure of the Mayor"). Moreover, by January, the identity of that Mayor will change.

The very nature of the intertwined structure of Plaintiff and Defendants make plain that the litigation would benefit from the presence of the very people this legislation was designed to protect.

### B.   Alternatively, the Court Should Grant Permissive Intervention.

Even if the Court determines that Proposed Intervenors are not entitled to intervene as a matter of right, the Court should exercise its broad discretion to grant permissive intervention. Rule 24(b)(1)(B) provides that, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Even where the district court denies intervention as of right, permissive intervention might be proper or warranted, as it would be here. *See Hoots v. Pennsylvania*, 672 F.2d 1133, 1136 (3d Cir. 1982). "The permissive intervention rule is to be construed liberally with all doubts resolved in favor of permitting intervention." *Koprowski v. Wistar Inst. of Anatomy & Biology*, No. 92-cv-1132, 1993 WL 332061, at *2 (E.D. Pa. Aug. 19, 1993) (internal citation omitted).

Proposed Intervenors seek to assert defenses against the District's claims that the Ordinance is preempted, unconstitutional, and a violation of Pennsylvania law. Proposed Intervenors satisfy the common-questions element of Rule 24(b) because the central arguments

they will raise in their responsive pleading arise out of the same set of facts and law as those of the District and Defendants. *See* Ex. F., Proposed Intervenors' Answer.

In exercising discretion as to permissive intervention, courts consider "whether the proposed intervenors will add anything to the litigation." *Kitzmiller v. Dover Area Sch. Dist.,* 229 F.R.D. 463, 471 (M.D. Pa. 2005); *accord Hoots*, 672 F.2d at 1136 (examining an intervenor's "contributions to the proceedings."). Here that benefit is plain: Proposed Intervenors contribute the perspective of myriad Philadelphia parents who would be burdened if the District were successful in this litigation. As such, they will add to the litigation by presenting a distinct perspective on the legal and factual issues before the Court. Proposed Intervenors' contributions will complement and amplify the Defendants' arguments against the District's claims.

Because Proposed Intervenors satisfy the baseline commonality requirement of Rule 24(b)(1)(B) and their intervention would not delay or prejudice  the adjudication of the original parties' rights, the Court should permit intervention. *See Page v. DTE Midstream, LLC*, No. 2:19-cv-01345-DSC, 2020 WL 5519052, at *6 (W.D. Pa. July 10, 2020), *report and recommendation adopted*, No. 2:19CV1345, 2020 WL 5513573 (W.D. Pa. Sept. 14, 2020) (granting permissive intervention where intervenor raised common questions of law and fact); *Hyland v. Harrison*, No. Civ.A. 05–162–JJF, 2006 WL 288247, at *6 (D. Del. Feb. 7, 2006) (permissive intervention appropriate where applicant's motion "based on the same facts and circumstances as this case, seeks substantially the same relief, and raises similar legal issues").

## IV.    CONCLUSION

The Court should grant the Motion to Intervene and allow Proposed Intervenors to

participate as defendant-intervenors in this action.


Date:   March 16, 2023                    Respectfully submitted,


                                          By:  */s/ Daniel Urevick-Ackelsberg*
                                          Daniel Urevick-Ackelsberg (Bar No. 307758)
                                          Sarah Kang (Bar No. 207432)
                                          Caroline Ramsey (Bar No. 329160)
                                          PUBLIC INTEREST LAW CENTER
                                          2 Penn Center
                                          1500 JFK Blvd., Suite 802
                                          Philadelphia, PA 19102
                                          Telephone:  (215) 627-7100

                                          *Attorneys for Proposed Intervenors*