# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE SCHOOL OF PHILADELPHIA,<br>*Plaintiff,*<br><br>v.<br><br>THE CITY OF PHILADELPHIA,<br>CITY OF PHILADELPHIA DEPARTMENT<br>OF PUBLIC HEALTH,<br>MANAGING DIRECTOR TUMAR<br>ALEXANDER,<br>*Defendants.* | Civil Action<br><br>No. 23-0238-WB |

## <u>DECLARATION OF SHANÉE GARNER</u>

Pursuant to 28 U.S.C. § 1746, I, Shanée Garner, hereby declare as follows:

1.      I have personal knowledge of the matters stated herein and would testify to the same if called as a witness in Court.

2.      I am over eighteen years of age and am otherwise competent to testify.

3.      I am a lifelong resident of Philadelphia, a graduate of West Philadelphia High School, and the mother of two children, including a son who has completed enrollment for 1st grade in the School District for the 2023-24 school year.

4.      I have spent my professional life trying to improve educational opportunities for children in Philadelphia, as a teacher in the School District, as a policy professional with Public Citizens for Children and Youth, and as Legislation and Policy Director for Councilmember Helen Gym.

5.      I am the Founding Executive Director of Lift Every Voice Philly, a Philadelphia-based nonprofit. I have served in that role since the organization's founding in 2021.

6.     Lift Every Voice is a member-based, Black-led, multi-racial organization comprised of parents,, and long-time community organizers committed to transforming Philadelphia schools by advancing racial, economic, and education justice. We have parent-members in multiple schools in Philadelphia, including Powell, Bryant, Houston, and Greenfield elementary schools.

7.     Lift Every Voice exists because parents should have a greater say in school level decisions that impact their families, and because we believe every child is entitled to a racially and economically just school system.

8.     Lift Every Voice has a strong interest in upholding the City's asbestos ordinance, which ensures that the schools our members' children attend, are safe, and that the School District is transparent with families regarding school building safety. Our members deserve to know the conditions of the schools their children attend each day.

9.     Our members value public education, but have major concerns about the District's ability to meet the needs of their children's safety and academic needs. Our members are consistently shut out of decisions regarding their children's education, and they are provided only limited access to basic information about things like school staffing levels, the academic progress of their students, and the conditions of their school buildings.

10.    Oversight of School District facilities is critically important, as is transparency about the conditions of School District facilities. Our members have children in schools that are very old, including Bryant, Houston, and Lea Elementary. This creates particular concern for hazards such as lead paint, lead in water, and asbestos.[1] Moreover, some our members have

---

[1] Barbara Laker, Wendy Ruderman, and Dylan Purcell, *Toxic City: The Ongoing Struggle To Protect Philadelphia's Children From Environmental Harm,* Phila. Inquirer, May 3, 10, 17, 2018, available: https://www.inquirer.com/news/inq/toxic-city-philadelphia-inquirer-

children with chronic health conditions, like asthma, which are exacerbated by the poor conditions of school buildings.

11.     Although schools are public institutions, our members have to make decisions about their children's education despite parents often not even being allowed inside school buildings. In other words, our members express concern that there are issues with building conditions, yet they can't access the buildings, and are not provided information to substantiate or calm their fears. Our members express that they try to get  basic information about school building air and water quality, but repeatedly hit walls with the School District.

12.     These concerns get to the nature of our group. Lift Every Voice was founded in part, because the low-income, Black parents that make up much of the District's families are often ignored, while more powerful, more privileged parents are often able to get the District's attention to solve problems. This dynamic has played out repeatedly in District responses to building conditions, and demonstrates why City of Philadelphia oversight and District transparency are critical.

13.     For example, just in the last few days, two School District buildings closed due to the presence of asbestos. In one of the closed schools, the District admitted it knew that there were problems with asbestos *for two years*, yet somehow didn't disclose this information to parents or educators.[2]

14.     This is part of a decades-long  pattern our organization seeks to combat through systemic change. For example, in recent years, the District decided to co-locate students from

_____

investigation-lead-asbestos-schools-20170618.html.
[2] Kristen Graham, Phila. Inquirer, *Philly schools knew of damaged asbestos at Building 21 at least two years before closure*, Mar. 7, 2023, available: https://www.inquirer.com/news/building-21-asbestos-strawberry-mansion-virtual-watlington-20230307.html

Science Leadership Academy (SLA) within a building with students from Ben Franklin High School. To do so, the School District started construction a year prior to SLA students' arrival. Ben Franklin students and staff remained in the building during this time, learning in an active construction site. The Ben Franklin community warned the District about air quality from the construction, including concerns about asbestos. The District failed to adequately respond, and Ben Franklin students stayed in the building all year.[3]

15.     At the beginning of the next school year, SLA students moved in, and construction was still ongoing. SLA families are generally speaking far more privileged and powerful than Ben Franklin parents. When those families raised concerns about the safety of the building, they were heard: the District acknowledged the presence of asbestos, shut down the building, and relocated students for five months.[4]

16.     This was not an isolated incident. In 2019, the District was warned of potential asbestos exposure at Meredith Elementary, one of Philadelphia's most privileged schools. The District responded within a couple days, shutting the gym. Yet that same year, when the District was alerted to the possible presence of asbestos at Peirce Elementary School—a much less privileged community—the District kept the gym open for over a month.[5]

---

[3] Kristen A. Graham and Wendy Ruderman, *On the $50M Ben Franklin/SLA project, Philly school district ignored warning signs, endangered students' health*, Phila. Inquirer, Aug. 19, 2020, available: https://www.inquirer.com/education/ben-franklin-sla-construction-project-philadelphia-school-district-report-20200819.html.
[4] Wendy Ruderman and Kristen A. Graham, *Missed asbestos, dangerous dust: How Philadelphia's Ben Franklin H.S. project went wrong,* Phila. Inquirer, Oct. 2019, available: https://www.inquirer.com/education/asbestos-school-construction-philadelphia-ben-franklin-sla-20191018.html.
[5] Kristen A. Graham and Wendy Ruderman, *Damaged asbestos was found in a North Philly school gym a month ago. It's still there.*, Phila. Inquirer, Oct. 24, 2019, https://www.inquirer.com/news/asbestos-philadelphia-schools-peirce-cancer-meredith-20191024.html.

17.     Given the track record of the District and what our members have experienced as a result, we know that standards, oversight, and transparency are critical to the well-being of our members' children and to the success of public education in Philadelphia. Everyone involved in public education has an obligation to keep children safe, to keep promises to children and communities, and to ensure transparency about building conditions on the front end. We cannot rely on the School District to do it alone, and we cannot allow a system where only privileged parents are able to ensure their children attend safe, healthy schools.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16 day of March, 2023, in Philadelphia, Pennsylvania.

Shanée Garner

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE SCHOOL OF PHILADELPHIA,<br>        *Plaintiff,*<br><br> v.<br><br>THE CITY OF PHILADELPHIA,<br>CITY OF PHILADELPHIA DEPARTMENT<br>OF PUBLIC HEALTH,<br>MANAGING DIRECTOR TUMAR<br>ALEXANDER,<br>        *Defendants.* | Civil Action<br><br><br>No. 23-0238-WB |

## DECLARATION OF DAVID MASUR

Pursuant to 28 U.S.C. § 1746, I, David Masur, hereby declare as follows:

1.      I have personal knowledge of the matters stated herein and would testify to the same if called as a witness in Court.

2.      I am over eighteen years of age and am otherwise competent to testify.

3.      I am the Executive Director of PennEnvironment. I have served in that role since 2002.

4.      PennEnvironment is a statewide, citizen-based environmental advocacy organization. Our membership consists of dues paying members as well as grassroots members. We have approximately 800 dues-paying members that reside in Philadelphia. Many of our members are parents in the School District of Philadelphia that are specifically interested in using law and policy to ensure the safety of Philadelphia schools.

5.      PennEnvironment is a co-founder and one of the leaders of the Philly Healthy Schools Initiative, a coalition of parent groups, unions (including the teachers' union), home and school associations, education groups, civic associations, and many more that want to work on

1

identifying and proposing solutions to health risks affecting our schools and students. We believe that working towards a healthy environment in schools is so necessary that we volunteer our staff time, office space, and financial resources to the efforts of the Philly Healthy Schools Initiative.

6.     PennEnvironment has a strong interest in upholding the City of Philadelphia's asbestos ordinance and ensuring that the School District complies with the ordinance. We have long fought for the safety of students in schools and for transparency of information provided to the public about environmental and safety concerns. We have successfully advocated for changes to the Philadelphia Building Code to protect the safety and welfare of students and staff. And we specifically advocated for the creation of the very law that is being challenged in this litigation.

7.     PennEnvironment first became involved with safety in Philadelphia schools in 2016 when we worked to combat lead in school drinking water. Our advocacy work, alongside other organizations and members of City Council, contributed to City Council passing a law in 2017, using the Philadelphia Building Code as a vehicle, to require the District to test for lead at all school drinking fountains, post the results, and set a baseline standard for lead in school drinking water. We continued that push for school safety, and in 2019, worked with City Council to use the Philadelphia Building Code improve the conditions in schools related to lead paint testing and remediation.

8.     And we then continued further in 2022, working with City Council to use the Philadelphia Building Code to require the District to replace all drinking fountains in Philadelphia school buildings with lead-filtering hydration stations by 2025.

9.     The implementation of those laws demonstrates why the District needs basic oversight. For example, despite the District being required by law to test for lead contamination in drinking water at every Philadelphia school building every five years and

publish the data on a publicly available website, by February 2022, the District had published

testing data for only 29% of public schools in the city. This demonstrated lack of accountability

and transparency by the School District makes it all the more important for the City's asbestos

ordinance to be upheld. We cannot trust the District to provide necessary environmental and

safety information to the public without being forced to do so by law, let alone to follow basic

best practices and health-based protocols to protect children, teachers and other individuals from

known health hazards.

10.      PennEnvironment is a strong proponent of providing the public with free, easily

accessible information about environmental issues and how they may affect health and safety of

individuals. Whenever we do any study, we make sure we provide all the findings and reports

online for the public to freely access. We believe that is the bare minimum that the District

should provide to its parents about information as important as asbestos in school buildings. We

are aware of how important it is for parents to be informed about possible environmental hazards

in their children's schools and had that in mind while we did our work combating lead in school

drinking water. We made sure to publish all the information we gathered and even created an

interactive map that displayed the data in an easily digestible manner.

11.      PennEnvironment believes that asbestos in Philadelphia schools is a major

problem. There is a long-standing trail of evidence pointing to asbestos in Philadelphia school

buildings. For example, in August 2019, the renovation of Ben Franklin High School and

Science Leadership Academy building uncovered asbestos contamination. Over the following

four months, the public learned of seven more Philadelphia schools with asbestos contamination.

Moreover, since the filing of this lawsuit, the School District has had to close Building 21 due to

asbestos contamination that the District officials allegedly were aware of for over two years prior to the closure. This is clearly not an isolated problem in our schools.

12.     We approached the School District multiple times about working together to address and combat this dangerous issue. We tried to make recommendations to former Superintendent Dr. Hite as well as other employees of the District. For example, the School District was using antiquated asbestos tests and we recommended that they change this practice to use updated testing. Our recommendations did not appear to be taken into consideration.

13.     In the aftermath of additional asbestos issues in schools such as SLA-Beeber, Councilmember Derek Green created a working taskforce of experts and stakeholders to look into best practices for addressing the problem of asbestos in Philadelphia schools. PennEnvironment worked with Councilmember Green and members of his taskforce as he introduced the asbestos ordinance that is the subject of this litigation. We regularly reviewed drafts of the ordinance and provided feedback to Councilmember Green's office. PennEnvironment further provided assistance by advocating strongly for the passage of the ordinance. Like our previous advocacy, the ordinance uses the Philadelphia Building Code to impose basic safety requirements upon the School District of Philadelphia.

14.     PennEnvironment understands that asbestos in Philadelphia public schools is a big concern. But it is not a problem that is too large to address. If the City's asbestos ordinance is upheld, that is an important first step in solving the problem. We will continue to work with parents, the City Council, the School District, and many other organizations to ensure that students, teachers, and school staff are safe in Philadelphia schools from asbestos and other environmental contaminants.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Executed this ___15___ day of March, 2023.

David Masur

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE SCHOOL OF PHILADELPHIA,<br>                *Plaintiff,*<br><br> v.<br><br>THE CITY OF PHILADELPHIA,<br>CITY OF PHILADELPHIA DEPARTMENT<br>OF PUBLIC HEALTH,<br>MANAGING DIRECTOR TUMAR<br>ALEXANDER,<br>                *Defendants.* | Civil Action<br><br>No. 23-0238-WB |

## <u>DECLARATION OF LAURIE MAZER</u>

Pursuant to 28 U.S.C. § 1746, I, Laurie Mazer, hereby declare as follows:

1.      I have personal knowledge of the matters stated herein and would testify to the same if called as a witness in Court.

2.      I am over eighteen years of age and am otherwise competent to testify.

3.      I am a Philadelphia resident. I have two children that attend the Fanny Jackson Coppin School. My children are in the fourth and seventh grade and have both attended Coppin since kindergarten.

4.      I am an engaged parent in my children's school and served on Coppin's School Advisory Committee during the 2016/2017 and 2017/2018 school years. I play a leadership role in Parents United for Philadelphia, a parent-led city-wide organization focused on engaging parents and giving voices to parents to improve school conditions. I'm also a member of the steering committee of the Philadelphia Healthy School Initiative, a coalition of student and parent organizations, school staff, environmental organizations, and more that is dedicated to protecting the health and safety of Philadelphia public school students and staff.

1

5.      I have a strong interest in this litigation not only as a parent of two children in a

Philadelphia public school, but also as an organizer who has long fought for the safety of

Philadelphia public schools. I have been engaged in AHERA and asbestos issues in Philadelphia

schools since 2017 and have had much difficulty in obtaining information relating to asbestos

from the School District. This should not be the case and the School District must be made to

comply with the City of Philadelphia's asbestos ordinance. I do not believe that the District

should be allowed to make parents and other interested individuals jump through hurdles to

obtain basic information about school buildings safety.

6.      Moreover, I understand that the School District is arguing that under state law the

City has no power to regulate anything to do with the safety of Philadelphia school buildings.

This is deeply concerning to me as a parent. I have worked in coalitions to have City Council

mandate safety requirements in schools. I am concerned for the safety of my and other school

children should City Council be stripped of that power.

7.      My concern goes beyond just asbestos. In 2017, I joined a broad coalition that

included the School District, the Commonwealth Association of School Administrators, the

Philadelphia Federation of Teachers, and parents to create a protocol for addressing lead paint in

Philadelphia public schools. Coppin was one of the initial schools in the School District's lead

paint and plaster stabilization program and, after a few starts and stops, the lead paint

stabilization at our school was a success because of the modifications we advocated for in the

protocol. This protocol was successfully rolled out at other schools while we continued to meet

monthly with the School District and other stakeholders to provide input and feedback. The

collaborative process we used to craft a lead paint stabilization protocol ended up being so

successful that we thought we could do the same to address other problems plaguing school

buildings. When we suggested including other topics in these meetings beyond lead, including

asbestos, mold, HVAC, and pests, while there was initial buy-in from the School District on

expanding the scope of the group, the School District eventually shut the group down. The

School District refused to have any further meetings with us after May 2020, despite our

continued inquiries. Instead, the District created an environmental advisory committee in January

2021 that seemed to seek no real input from parents and in turn provided no helpful information

to parents.

        8.      With another member of Parents United, I started looking into the issue of

asbestos in school buildings and we submitted a Right-to-Know ("RTK") request to the School

District and the City of Philadelphia in March 2021 regarding the same. I further submitted a

RTK request to the School District requesting data uploaded to the District website

https://www.philasd.org/operations/2021/04/21/donesafe/, a database program to which the

District uploads google sheets of data from AHERA inspections. The District created many

barriers to our requests and contended that AHERA documents weren't subject to Open Records

law.

        9.      In May 2021, the School District finally gave us access to their AHERA library

located at 440 N. Broad Street to review the information requested. However, this access was

heavily restricted. We could only access the documents, just a few at a time, in person, at this

location, and on a weekday before 3:30pm. This is not something that we, as working parents,

could easily make time to do. I felt like we were constantly fighting through the District's

repeated roadblocks and attempts to hamper our ability to access information.

        10.     Nevertheless, we made the time to view the AHERA documents at 440 N. Broad

Street under those conditions. While we were at the AHERA library, the School District

informed us that we could not use our phones to take photos of the documents, we could not take

any of the documents out of the building, and we could only take notes about the documents

while someone watched us or pay $0.25 a page for copies. We visited the AHERA library two

times and each time the documents we reviewed were not the complete set of documents we

requested. During one of our visits, a representative of the School District stood over us as we

reviewed documents and kept advising us to drop our RTK request. We felt extremely

uncomfortable and felt like the District's goal was to stop us from sharing information with the

public. We had to fight the District to be given access to all the documents we requested and

ultimately were given hard copies of the reports we had not seen, with the copy fee waived,

because of the difficulties in scheduling additional AHERA library visits over the summer.

11.     The AHERA reports about my children's school as well as other schools, revealed

that there was a lot of asbestos in school buildings throughout Philadelphia. Those reports are

important, but they still provided an incomplete picture of asbestos in the buildings. While a

building may be flagged for containing asbestos, there is no indication from these reports

whether the asbestos has been remediated.

12.     I sought to get some further support from the City Council about what I believe is

a dearth of information and resources for parents with respect to asbestos in our children's

schools. I, as a parent and someone who cares about the safety of school buildings, want to be

able to participate in solving the problem in a meaningful way.

13.     Eventually the Superintendent informed the public that the School District would

at least publish AHERA reports online. Yet the School District repeated failed to do so. For

example, the School District's website has no AHERA reports from the 2019-20, 2020-21, or

2021-22 school years. And only during this litigation – on March 8, 2023 – did the School

4

District upload AHERA reports for this school year. As I have testified to multiple times with the Board of Education, the School District's record of providing up-to-date AHERA reports and other information on environmental and safety issues was, and continues to be, deficient.

14.     I believe that the School District views us parents as antagonists when we simply want to collaborate and solve the problem together. When we all worked together to solve the lead paint issue, we achieved great success. I believe that parents can understand the issues at hand and care very strongly about the health of our school buildings. At the very least, we should be provided with readily accessible information about public school buildings so we can be armed with the necessary information going forward.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _15__ day of March, 2023, in Philadelphia, Pennsylvania.

_____

Laurie Mazer

# EXHIBIT D

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE SCHOOL OF PHILADELPHIA,<br>　　　　　*Plaintiff,*<br><br>　v.<br><br>THE CITY OF PHILADELPHIA,<br>CITY OF PHILADELPHIA DEPARTMENT<br>OF PUBLIC HEALTH,<br>MANAGING DIRECTOR TUMAR<br>ALEXANDER,<br>　　　　　*Defendants.* | Civil Action<br><br>No. 23-0238-WB |

## DECLARATION OF AMARA ROCKAR

Pursuant to 28 U.S.C. § 1746, I, Amara Rockar, hereby declare as follows:

1.　　I have personal knowledge of the matters stated herein and would testify to the same if called as a witness in Court.

2.　　I am over eighteen years of age and am otherwise competent to testify.

3.　　I am a Philadelphia resident. I have two children, ages seven and nine, that attend the Henry C. Lea School in West Philadelphia. Both of my children have attended the Lea School since kindergarten.

4.　　I have a strong interest in this litigation and requiring the Philadelphia School District to comply with the City of Philadelphia's asbestos ordinance. As a parent of two children in the School District, I want the District to be transparent and held accountable to families regarding the conditions of schools, particularly as it relates to asbestos. This asbestos law would have been helpful to me back in 2021 when I spent four months fighting with the School District, submitting five Right-to-Know ("RTK") Requests, attending Board of Education ("BOE") meetings, visiting the AHERA library at the School District twice, and having numerous

1

communications with employees of the District to get, what I believe to be, basic information
about asbestos containing materials and asbestos testing in my children's school building.

5.      In the fall of the 2020/2021 school year, I attended a virtual meeting at the Lea
School to discuss preparations for returning to hybrid instruction. The school needed to flush out
their long-unused HVAC ventilation system and do testing for air balancing in classrooms to
ensure that there would be proper air flow when students returned to the classroom. However,
because of the winter wave of Covid, hybrid reopening was put on pause.

6.      In March 2021, the District announced a staggered resumption of hybrid learning.
However, the Lea School was not on the list of schools reopening announced on March 8 or
March 15. I read an article in Chalkbeat Philadelphia about concerns associating unused
ventilation systems being brought back into use with possible health hazards related to asbestos.
I began to wonder if environmental reasons were involved in our school not reopening for hybrid
learning.

7.      I looked online and found AHERA reports from 2018/2019. From the 2018/2019
reports, I could see that there was asbestos containing material in the Lea School building,
including in the unit ventilator insulation, but I could not find any updated information or
reports. On March 15, I emailed Monique Causley, the AHERA manager for the School District,
to ask whether the 2020/2021 AHERA inspections had been completed. She responded with a
link to the 2018/2019 inspections informing me that the next round of inspections would be
scheduled for the 2021/2022 school year. I then looked on atlas.phila.gov to see if there were any
recent permits pulled for the Lea School for alterations. There were none.

8.      On March 19, I submitted my first RTK request for information including all
documents related to asbestos inspection and/or asbestos abatement of ventilators and ventilator

2

insulation in the Lea School. The District responded to my request on March 26 by simply letting me know that AHERA records are available for public inspection in the AHERA library located at 440 N. Broad Street. The District further responded that if I wanted any other documents, I should make a more specific request.

9.     During this time, on March 22, the Lea School was included on the list of schools announced to reopen for hybrid learning. The Lea School would be open for students on April 5.

10.     I submitted another RTK request on April 8 requesting all documentation for testing, results, and reports where "No Asbestos Detected" was determined in unit ventilator insulation for specific classrooms and areas in the Lea School. I did not hear from the School District within 30 days and when I contacted the District, I received an email from Roberto Fernandez, the Assistant General Counsel, saying that the request "fell through the cracks." On May 12, Mr. Fernandez responded to my request and stated that there are no responsive documents. He further stated that the Lea School's unit ventilators were inspected on March 16 by a building inspector for asbestos containing materials and that none were identified and thus testing was not necessary.

11.     I did not understand how a building inspector would be able to determine that there were no asbestos containing materials without conducting any testing of the materials. Thus, the next day, on May 13, I submitted an RTK request for all documentation between March 1, 2021 and May 12, 2021 of unit ventilator servicing, reconditioning, and replacement and on May 14, I submitted an RTK for all documentation, including photographs, notes, and reports from the March 16 inspection of the Lea School.

12.     On May 20, I testified at a public Zoom hearing of the BOE about asbestos containing material at the Lea School and the difficulties I have had in obtaining information

from the District. Former Superintendent Dr. Hite responded that unit vents were all tested at the Lea School and they were found not to contain any asbestos containing material. I was unable to respond to Dr. Hite because of the format of the Zoom call. So, at this surprising revelation, on that same day, I submitted another RTK request seeking any documents related to asbestos testing at the Lea School referenced by Dr. Hite at the BOE hearing.

13.     At a following BOE hearing held on May 27, Dr. Hite stated that his statements regarding the Lea School asbestos testing was inaccurate. In fact, while some materials were collected on March 16 from the Lea School unit ventilators, they were not tested for asbestos because the inspector visually determined they did not contain asbestos. Dr. Hite further stated that Chief Operating Officer Reggie McNeil can respond to further questions regarding the Lea School. In a follow up email, Mr. McNeil did nothing beyond reiterating Dr. Hite's statements.

14.     As a parent, all of this information left me with so many questions. Namely, how can an inspector determine that, without testing, any collected material did not contain asbestos? Based on my review of the 2018/2019 AHERA report, the Lea School was known to have asbestos containing material in its unit ventilator insulation. How could the School District now, years later, determine that any collected samples from the unit ventilator need not be tested simply because the inspector visually deemed them to not contain asbestos?

15.     On June 3, and in response to the District's refusal to provide me records because they were available for inspection, I visited the AHERA library located at 440 N. Broad Street on June 3. I was not able to view all the documents I wanted to see and was told to make another request for those documents and schedule another visit. Throughout mid-June, I had a lot of communications with the School District attorneys and it ended with me returning to the AHERA library on June 16. During this visit, I was provided a laptop containing documents for

me to view. I was informed that if I wanted copies of the documents, I would have to return for a third time where I would have to pay a copy fee.

16.     Around this time, on June 17, the District tested newly collected samples from the Lea School's unit ventilators and no asbestos was found. On June 21, Kimberly Dutch, the District's Associate General Counsel, produced documents in response to my RTK requests from May 13, May 14, and May 20. On June 29, Ms. Dutch also agreed to make the records that I viewed at the AHERA library available to me digitally.

17.     While the outcome of all of these events ended in a way that was satisfactory to me – being able to confirm that my children's school was indeed safe for them and other students – I do not think it should have taken four months of this level of demanding and pushing to receive this information. The School District likes to tell the parents that we are partners. It seems to me that this partnership ends when parents start asking about building safety and environmental concerns. I was shocked at how adversarial the entire process ended up being.

18.     This lawsuit was surprising to me because in the BOE hearings I attended, there were discussions about modernizing the system of sharing AHERA documents online. I could not agree more. An interested party should not have to go all the way to 440 N. Broad Street, during a work day, to review documents related to asbestos in school buildings. This lawsuit is showing me that the District feels no obligation to be transparent regarding really concerning environmental issues at schools and places of learning. Parents should not have to fight so hard to get every tiny bit of information they seek.

19.     The exact problem at hand was highlighted to me when I read about the closure of Building 21 earlier this month where the School District was apparently aware of damaged asbestos in the building for at least two years prior to the school's closure. This news really hit

home for me because this was exactly what I was trying to avoid when I went through my four-month ordeal fighting the School District for asbestos testing information and results in my children's school. During that time, the District made me feel as if I was being unreasonable and irrational with my requests. While my efforts were ultimately successful, reading about Building 21 made me angry because it seems like the School District will only do the right thing when it comes to asbestos in a school building when it is forced to do so by a "pushy" parent.

20.     The status quo the School District seeks to maintain unfairly puts the onus on the parents to have the time, resources, ability, and knowledge to gather important information about their children's school buildings. While I was able to get this information after four difficult months, not every parent or caregiver can do the same. The bottom line is this type of information should not be so difficult to obtain. The School District should be transparent about asbestos inspections of school buildings and results of those inspections. We deserve to know this information and we deserve to know it without having to jump through a multitude of hoops to get it. We should never have to be surprised by unexpected closures of our children's school buildings based on information the School District had available to them for years about possibly dangerous asbestos conditions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _14th_ day of March, 2023, in Philadelphia, Pennsylvania.

_Amara Rockar_

Amara Rockar

6

# EXHIBIT E

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THE SCHOOL OF PHILADELPHIA,<br>*Plaintiff,*<br><br>v.<br><br>THE CITY OF PHILADELPHIA,<br>CITY OF PHILADELPHIA DEPARTMENT<br>OF PUBLIC HEALTH,<br>MANAGING DIRECTOR TUMAR<br>ALEXANDER,<br>*Defendants.* | Civil Action<br><br>No. 23-0238-WB |

### DECLARATION OF SONIA ROSEN

Pursuant to 28 U.S.C. § 1746, I, Sonia Rosen, hereby declare as follows:

1.     I have personal knowledge of the matters stated herein and would testify to the same if called as a witness in Court.

2.     I am over eighteen years of age and am otherwise competent to testify.

3.     I am a Philadelphia resident. I have two children that attend the Science Leadership Academy at Beeber ("SLA Beeber"), a fifth grader and an eighth grader. My eighth grader has been at SLA Beeber since the sixth grade.

4.     As a parent of two students in the Philadelphia School District, I have a strong interest in upholding the City of Philadelphia's asbestos ordinance which ensures that the District is transparent with families regarding the conditions of schools. Prior to the City enacting the asbestos law, in the Summer of 2021, I, along with other parents, were forced to become vigorous advocates with the District in an effort to protect our children from unsafe conditions and force the District to be transparent with us about the conditions in our school. Based on my experiences, if the School District is not required to comply with the City's asbestos law, I do not

1

feel confident that the District will independently act in the best interests of our students in terms
of building safety and transparency.

5.     I was an active member of SLA Beeber's Home and School Association ("HSA")
between Fall 2020 and Winter 2022 and remain a member of the HSA today. In that position, I
experienced first-hand the District's mishandling of SLA Beeber's renovations in Summer 2021
and failed school opening for the 2021/2022 school year as a result of District inactions and
failure to inform parents of safety issues in the school building, including asbestos.

6.     SLA Beeber had long-standing plans for its renovation even before my children
started attending the school and work began in the school building sometime in Spring 2021. The
plans included building a science lab, renovating the gym, completely redoing bathrooms, and
more. This renovation was much anticipated as SLA Beeber's building, like many other school
buildings in the District, is very old and desperately needed the updates.

7.     Construction continued late into the summer of 2021 when parents started
expressing concerns that the school building would not be ready for the start of school on August
31, 2021. The HSA reached out to the school administration with these concerns on August 22
and asked if parents were permitted to walk through the school to be reassured that their children
would be safe in the building. As a result, on August 24, some members of the HSA were able to
visit the school. One of the parents that visited the school alerted other members of the HSA of
the concerning conditions she witnessed during this tour, such as two different parts of the school
building undergoing asbestos remediation, dust in the air, and incomplete and usable bathrooms.

8.     I started feeling even more concerned and wanted more information about the
construction in the school building. I knew there were many students at SLA Beeber with asthma

2

or other respiratory illnesses and I had no idea if it would be safe for them, as well as all children and staff, to return to the school building.

9.     During all of this, the School District was evasive when asked for information, simply stating that the building would be safe for students. They would only give verbal information about building safety, including asbestos testing, and provided zero documentation or testing results to assuage our concerns.

10.    Therefore, on August 27, we put out a public letter and petition demanding that the School District: 1) provide a safe, temporary building to SLA Beeber students and staff; 2) offer adequate time for our teachers to transition to the temporary building; 3) allow SLA Beeber to remain in the temporary location until our building is deemed safe; and 4) immediately revert to virtual instruction until a satisfactory plan for safe face-to-face learning is in place. This petition was signed by over 100 parents and students.

11.    On August 28, I joined a walk-through of the school building with a group of parents, SLA Beeber staff, the Assistant Superintendent of Innovation Schools Ryan Scallon, the District's Chief Operating Officer Reggie McNeil, and some members of the construction crew. During this walk-through, it appeared to me that they were trying to put their best face forward and convince the parents that the school building was safe for reopening. However, I was far from convinced. There was dust everywhere, walls and ceilings were ripped open or caving in, the bathrooms were far from ready, and there was no air circulation. It was abundantly clear to me that the building was not safe for students and staff.

12.    The representatives from the District, Mr. Scallon and Mr. McNeil, tried to comfort the parents by saying that the construction would only occur before and after school hours. We asked if they could test the dust or air quality throughout the day since construction

during those hours would still result in construction debris affecting the students and staff in the building. They would not agree to do the testing.

13.     We asked about asbestos remediation because we saw that walls were being torn down and ceilings were caving in in some parts of the school building. We were told that the remediation was already done but the District would not give us reports or any other evidence that it was done. When we asked for any reports and documentation, we were told that there was information posted to the door of the classrooms where construction was being done. However, this is not a building we enter on a regular basis and we would not be able to easily or regularly access the information we were seeking. At this walk-through, we demanded that Mr. McNeil send all SLA Beeber parents a full update on the state of the construction projects in the school building.

14.     The next day, August 29, we received a letter from the District with the update we requested on the state of the construction projects as well as an invitation to a "town hall" meeting. During this meeting, we spent 18 minutes as silenced audience members in a webinar-style meeting where the District simply repeated what they wrote in the letter. The District did not answer any of the questions that they had collected from us, including about the safety of the building as it related to asbestos or otherwise.

15.     This "town hall" meeting angered us even further and we put all our energies into our rally scheduled for that following day, August 30. This rally was held in front of SLA Beeber and was attended by at least three TV stations, the Philadelphia Inquirer, at least six elected officials from across the City, many students and parents, and community groups that came to support our cause.

16.     Only after all those efforts, including the work of a parent who was also a member of the City Council, did the District take the action we needed to keep our children safe. Our middle school students were moved to an entirely new school building for the year.

17.     As a result of all of our efforts, the School District finally agreed to send a written report every two weeks to our school's principal with an update on the construction project as well as documentation of air quality testing. The principal then passed along this report to the parents and teachers.

18.     While I am glad that the District was forced to regularly provide this information to our principal, I believe that we should have had this information from the very start as a matter of right. We should not have had to fight so hard to force the School District to do what I believe is the bare minimum to keep our children safe and to assure us that they are indeed safe. Sadly, I also don't know if we would have been successful in our endeavors if we did not have councilmembers fighting on our behalf as well as the press reporting on these events.

19.     As a result of all our interactions with the School District, my trust in the District was eroded and I did not feel that the District was taking the health of our children and school staff seriously. If the parents of SLA Beeber students did not get involved here, our children would have all started school in an unsafe building. We would have had no idea as to the air quality of the building in which our students attend school every day.

20.     When I first heard of this litigation and that the School District filed a complaint against the City because they did not want to comply with the Philadelphia asbestos law, it took me back to 2021 when we were fighting with the School District. Based on my experiences, I believe that the School District cannot be trusted to provide information about asbestos in the

school buildings unless they are legally required to do so. Transparency in school buildings is very important to me as a parent and I believe that this law is absolutely necessary.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this ___15___ day of March, 2023, in Philadelphia, Pennsylvania.

Sonia Rosen

6

EXHIBIT F

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| THE SCHOOL OF PHILADELPHIA,<br><br>*Plaintiff,*<br><br> v.<br><br>THE CITY OF PHILADELPHIA,<br>CITY OF PHILADELPHIA DEPARTMENT OF<br>PUBLIC HEALTH,<br>MANAGING DIRECTOR TUMAR<br>ALEXANDER,<br><br>*Defendants.* | Civil Action<br><br><br><br>No. 23-0238-WB |

**ANSWER OF INTERVENORS LIFT EVERY VOICE PHILLY, PENNENVIRONMENT,**
**LAURIE MAZER, AMARA ROCKAR, AND SONIA ROSEN**

Lift Every Voice Philly, PennEnvironment, Laurie Mazer, Amara Rockar, and Sonia Rosen ("Intervenors"), by and through their undersigned counsel, hereby file the following answer to the Complaint of the School District of Philadelphia, and aver the following:

1.       Admitted in part, denied in part. This paragraph contains conclusions of law to which no response is required. However, to the extent a response is required, it is admitted that on June 1, 2022, Bill No. 210685-AA was signed in to law, and requires, when implemented, the School District of Philadelphia to obtain from the City of Philadelphia a "Special Certificate of Inspection" related to asbestos. It is denied that the advisory board empaneled by the law has power to do more than make non-binding recommendations about best practices regarding property-related hazards.

2.       Admitted.

3.       Denied. This paragraph contains conclusions of law to which no response is required. However, to the extent a response is required, the bill on its terms requires action only

1

after six months' notice to the School District. That notice has not been provided, and accordingly, threatens no in-person learning at all. The remainder of the paragraph is denied.

4.      Admitted in part, denied in part. This paragraph contains conclusions of law to which no response is required. However, to the extent a response is required, it is admitted that the bill, as written, was to be enforced as early as the 2023-24 school year. That enforcement, on its terms, requires action only after six months' notice to the School District, such notice has not been provided, and accordingly, enforcement pursuant to the law threatens no in-person learning at all. Finally, any implication that the law's advisory panel impacts enforcement of the law is denied.

5.      Admitted.

6.      Denied in part. Intervenors lack knowledge or information sufficient to form a belief about the truth of the allegation regarding the District's operating budget. It is further denied that such oversight is unlawful.

7.      Denied. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, the legislation provides six months' notice to the District. It is further denied that the City lacks the power to regulate the safety of school buildings generally. *See Sch. Dist. of Phila. v. Zoning Bd. of Adjustment*, 207 A.2d 864, 868–69 (Pa. 1965) ("We are not persuaded that the legislature has, by its statutory pronouncements, given a school district of the first class complete and plenary power over its physical plants. In fact, the opposite is indicated."); *Hazelton Area Sch. Dist. v. Zoning Hearing Bd.*, 778 A.2d 1205, 1213 (Pa. 2001) ("A School is not an island: it necessarily serves a community function and exists as part of a community . So long as the local zoning authority does not interfere with the district's core function, there is nothing in the school legislation to

restrict local authorities from seeking to blend the school into the community in a manner that

protects the *health, safety, and general welfare of the community*.") (emphasis added).  It is

further denied that the City is prevented from regulating asbestos safety specifically. 15 U.S.C. §

2649(a), (c) (making explicit that AHERA does not "preempt, displace, or supplant any other

State or Federal law" and does not preclude the establishment of "more stringent requirements

with respect to asbestos in school buildings").

## PARTIES

8.      Admitted.

9.      Admitted.

10.     Admitted.

11.     Admitted.

## JURISDICTION AND VENUE

12.     Admitted.

13.     Admitted.

## FACTUAL BACKGROUND

14.     Admitted upon information and belief.

15.     Admitted upon information and belief.

16.     Admitted.

17.     Admitted in part. It is admitted that the District has suffered from decades of

systemic underfunding, cannot tax itself, and is therefore at the mercy of federal, state, and local

authorities for adequate funding. Intervenors lack knowledge or information sufficient to form a

belief about the truth of the remainder of the paragraph.

18.     Admitted.

19.     Admitted in part. It is admitted that the District oversees aging school buildings, and suffers from chronic underfunding. Intervenors lack knowledge or information sufficient to form a belief about the truth of the remaining allegations.

20.     Admitted in part, denied in part. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, Intervenors admit the District is subject to various lead and asbestos regulations, and is regularly challenged by chronic underfunding. The remaining averments are denied.

21.     Admitted in part, denied in part. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, Intervenors admit the District is subject to federal asbestos law, but it is denied this is the only law the District is subject to.

22.     This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, Intervenors lack knowledge or information sufficient to form a belief about the truth of the allegation.

23.     This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, Intervenors lack knowledge or information sufficient to form a belief about the truth of the allegation.

24.     Admitted upon information and belief.

25.     Admitted upon information and belief.

26.     Intervenors lack knowledge or information sufficient to form a belief about the truth of the allegation.

27.     Intervenors lack knowledge or information sufficient to form a belief about the truth of the allegation.

28.     Admitted in part. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, it is admitted that AHERA generally requires an in-depth inspection every three years. Intervenors lack knowledge or information sufficient to form a belief about the truth of the remainder of the allegation.

29.     Intervenors lack knowledge or information sufficient to form a belief about the truth of the allegation.

30.     Admitted in part. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, it is admitted that AHERA generally requires an in-depth inspection every three years. Intervenors lack knowledge or information sufficient to form a belief about the truth of the remainder of the allegation.

31.     Admitted in part, denied in part. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, it is admitted that AHERA generally requires periodic re-inspections. Intervenors are unable to verify the frequency of those inspections, and the remainder of the allegation is therefore denied.

32.     Intervenors lack knowledge or information sufficient to form a belief about the truth of the allegation.

33.     Intervenors lack knowledge or information sufficient to form a belief about the truth of the allegation.

34.     Intervenors lack knowledge or information sufficient to form a belief about the truth of the allegation.

35.     Denied. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, it is denied the City law is "nebulous,"

that it will remove staff and contractors away from asbestos abatement projects or inspections, or that such an oversight regime is "unnecessary."

36.     Denied. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, this paragraph conflates initial implementation dates of the statute as passed in 2003 with subsequent amendments subsequently passed into law, and is therefore denied.

37.     Admitted.

38.     Denied. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, the ordinance provides two methods by which the School District can meet its obligation: "the Health Department or a testing agency certified by the Pennsylvania Department of Labor and Industry has certified, within the previous three (3) years and four (4) months, that the building is in substantial compliance with the best practices for testing, remediation, abatement, cleaning, and management of asbestos." Any characterization of that language is denied.

39.     Admitted in part, denied in part. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, Intervenors admit that the law requires the issuance of regulations six months prior to enforcement of the statute. Moreover, the law specifically allows a state certified inspector to certify "that the building is in substantial compliance with the best practices for testing, remediation, abatement, cleaning, and management of asbestos." It is further admitted upon information and belief that the Managing Director, like the District's Superintendent and Board, has no special qualifications for the investigation, or management of asbestos or any other environmental hazard. Intervenors lack

knowledge or information sufficient to form a belief about the truth of the remainder of the allegation.

40.     Admitted.

41.     Admitted.

42.     Admitted in part, denied in part. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, Intervenors admit that the results of inspections must be posted online within ten days. The remainder of the allegation is denied.

43.     Intervenors lack knowledge or information sufficient to form a belief about the truth of the allegation.

44.     Admitted in part, denied in part. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, it is admitted, upon information and belief, that the Managing Director has not issued guidance or regulations enforcing the law. It is denied that under the law the School District will have less than six months to comply. The remainder of the allegation is denied.

45.     Denied. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, it is denied that a heretofore unenforced law, which on its terms provides six months of advance notice prior to enforcement, risks the closure of any buildings at all.

46.     Admitted in part. It is admitted that the effect of school closures has been profound. Intervenors lack knowledge or information sufficient to form a belief about the truth of the remainder of the allegation.

47.     Admitted in part, denied in part. It is admitted that closures of school buildings have drastic implications for children. It is denied that only the School District may determine the safety of its buildings generally. *See Sch. Dist. of Phila. v. Zoning Bd. of Adjustment*, 207 A.2d 864, 868–69 (Pa. 1965) ("We are not persuaded that the legislature has, by its statutory pronouncements, given a school district of the first class complete and plenary power over its physical plants. In fact, the opposite is indicated."). Moreover, while it is admitted that AHERA places requirements upon LEAs, it is denied that such responsibility preempts any other law. *See* 15 U.S.C. § 2649(a), (c) (making explicit that AHERA does not "preempt, displace, or supplant any other State or Federal law" and does not preclude the establishment of "more stringent requirements with respect to asbestos in school buildings").

48.     Denied. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, it is denied that only the School District may determine the safety of its buildings generally. *See Sch. Dist. of Phila. v. Zoning Bd. of Adjustment*, 207 A.2d 864, 868–69 (Pa. 1965) ("We are not persuaded that the legislature has, by its statutory pronouncements, given a school district of the first class complete and plenary power over its physical plants. In fact, the opposite is indicated."). Moreover, while it is admitted that AHERA places requirements upon LEAs, it is denied that such responsibility preempts any other law. *See* 15 U.S.C. § 2649(a), (c) (making explicit that AHERA does not "preempt, displace, or supplant any other State or Federal law" and does not preclude the establishment of "more stringent requirements with respect to asbestos in school buildings").

## COUNT I – CONFLICT PREEMPTION

49.     This is an incorporation paragraph to which no response is required.

50.     This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, the allegation is admitted upon information and belief.

51.     Admitted upon information and belief.

52.     Admitted.

53.     Admitted.

54.     Admitted in part, denied in part. It is admitted that AHERA vests oversight responsibility under that law specifically with LEAs. The remainder of the allegations are denied.

55.     Denied. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, Congress was explicit that AHERA creates "[n]o preemption":

> **(a) No preemption**
> Nothing in this subchapter shall be construed, interpreted, or applied to preempt, displace, or supplant any other State or Federal law, whether statutory or common.
> . . .
> **(c) State may establish more requirements**
> Nothing in this subchapter shall be construed or interpreted as preempting a State from establishing any additional liability or more stringent requirements with respect to asbestos in school buildings within such State.

15 U.S.C. § 2649 (emphasis in original). The remaining characterizations of the ordinance are denied.

## COUNT II – NON-DELEGATION

56.     This is an incorporation paragraph to which no response is required.

57.     Admitted.

58.     Denied.

59.     Denied. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, this allegation miscasts the plain language of the challenged ordinance, and is denied.

60.     Denied. It is denied that ensuring the safety of school building or mandating transparency places anyone at "the whim" of government, or that the District will have no intelligible principles to guide the District's efforts at compliance.

### COUNT III – DUE PROCESS

61.     This is an incorporation paragraph to which no response is required.

62.     This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, it is admitted that the paragraph accurately quotes the Privileges or Immunities Clause of the Fourteenth Amendment.

63.     Admitted.

64.     Admitted.

65.     Admitted.

66.     Denied. The challenged law, like a myriad of laws, provides for basic principles to be supplemented by a regulatory regime.

67.     Admitted in part, denied in part. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, it is admitted upon information and belief that the Managing Director, like the District Superintendent and School Board Members, is not an environmental expert, and that the parents, educators and others forming the law's advisory committee are generally not required to be experts in asbestos. It is further admitted that bill creates a minimum of six months' notice to the District prior to the identification of best practices. The remainder of the paragraph is denied.

68.     Admitted in part, denied in part. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, it is admitted that the law, without the accompanying regulations which it contemplates, does not identify what the City holds to be best practices for asbestos safety. The remainder of the paragraph is denied.

69.     Denied. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, it is denied that the law "usurp[s]" District authority. It is further denied that the City lacks the power to regulate the safety of school buildings, either generally, or with respect to asbestos. *See Sch. Dist. of Phila. v. Zoning Bd. of Adjustment*, 207 A.2d 864, 868–69 (Pa. 1965) ("We are not persuaded that the legislature has, by its statutory pronouncements, given a school district of the first class complete and plenary power over its physical plants. In fact, the opposite is indicated."); 15 U.S.C. § 2649(a), (c) (making explicit that AHERA does not "preempt, displace, or supplant any other State or Federal law" and does not preclude the establishment of "more stringent requirements with respect to asbestos in school buildings").

70.     Denied. The District has described neither a substantive or procedural due process injury.

### COUNT IV – UNLAWFUL REGULATION OF PUBLIC SCHOOLS

71.     This is an incorporation paragraph to which no response is required.

72.     This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, Intervenors lack knowledge or information sufficient to form a belief about the truth of the allegation.

73.     This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, Intervenors lack knowledge or information sufficient to form a belief about the truth of the allegation.

74.     This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, Intervenors lack knowledge or information sufficient to form a belief about the truth of the allegation.

75.     This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, Intervenors lack knowledge or information sufficient to form a belief about the truth of the allegation

76.     Admitted in part, denied in part. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, it is admitted that the paragraph accurately quotes specific portions of the Pennsylvania school code. It is denied that the City lacks the power to regulate the safety of school buildings, either generally, or with respect to asbestos. *See Sch. Dist. of Phila. v. Zoning Bd. of Adjustment*, A.2d 864, 868–69 (Pa. 1965) ("We are not persuaded that the legislature has, by its statutory pronouncements, given a school district of the first class complete and plenary power over its physical plants. In fact, the opposite is indicated."); 15 U.S.C. § 2649(a), (c) (making explicit that AHERA does not "preempt, displace, or supplant any other State or Federal law" and does not preclude the establishment of "more stringent requirements with respect to asbestos in school buildings").

77.     Denied. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, it is denied that the City lacks the power to regulate the safety of school buildings. *See Sch. Dist. of Phila. v. Zoning Bd. of Adjustment*, 207 A.2d 864, 868–69 (Pa. 1965) ("We are not persuaded that the legislature has, by its statutory

pronouncements, given a school district of the first class complete and plenary power over its physical plants. In fact, the opposite is indicated.").

78.     Denied. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, it is denied that the City lacks the power to regulate the safety of school buildings. *See Sch. Dist. of Phila. v. Zoning Bd. of Adjustment*, 207 A.2d 864, 868–69 (Pa. 1965) ("We are not persuaded that the legislature has, by its statutory pronouncements, given a school district of the first class complete and plenary power over its physical plants. In fact, the opposite is indicated.").

## COUNT V – DECLARATORY JUDGMENT

79.     This is an incorporation paragraph to which no response is necessary.

80.     Denied. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, and for the reasons identified above, in the New Matter, and in the City of Philadelphia's motion to dismiss, the District has failed to allege any violation of law whatsoever.

81.     Admitted.

82.     Denied. For a case or controversy to exist the District's claim must be ripe, which it is not.

83.     Denied. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, the District has identified no imminent harm whatsoever.

84.     Admitted.

85.     Denied. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, and for the reasons identified above, in

the New Matter, and in the City of Philadelphia's motion to dismiss, the District has failed to demonstrate any entitlement to a declaratory judgment.

### COUNT VI – DECLARATORY JUDGMENT

86.     This is an incorporation paragraph to which no response is necessary.

87.     Admitted.

88.     Denied.

89.     Denied. This paragraph contains a conclusion of law to which no response is required. However, to the extent a response is required, the challenged law provides the District six months' notice prior to any action, and no enforcement whatsoever has resulted from the law.

90.     Denied.

91.     Denied.

### NEW MATTER

1.     The District's claim is unripe. It has suffered no injury, and its claim rests upon speculative future action. *See Toilet Goods Ass'n, Inc. v. Gardner*, 387 U.S. 158, 163–64 (1967); *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 541 (3d Cir. 2017) (claim not ripe because, among other reasons, the statute at issue was "susceptible to a wide variety of interpretations and …we cannot yet state with certainty what conduct is authorized") (internal citation omitted).

2.     Federal law explicitly disclaims any preemption of other asbestos regimes, even those which impose additional burdens on a school district. 15 U.S.C. § 2649(a), (c) (making explicit that AHERA does not "preempt, displace, or supplant any other State or Federal law" and does not preclude the establishment of "more stringent requirements with respect to asbestos in school buildings").

14

3.      Pennsylvania law does not preempt municipalities from regulating the safety of school buildings. *See Sch. Dist. of Phila. v. Zoning Bd. of Adjustment*, 207 A.2d 864, 868–69 (Pa. 1965) ("We are not persuaded that the legislature has, by its statutory pronouncements, given a school district of the first class complete and plenary power over its physical plants. In fact, the opposite is indicated."); *Hazelton Area Sch. Dist. v. Zoning Hearing Bd.*, 778 A.2d 1205, 1213 (Pa. 2001) ("A School is not an island: it necessarily serves a community function and exists as part of a community . So long as the local zoning authority does not interfere with the district's core function, there is nothing in the school legislation to restrict local authorities from seeking to blend the school into the community in a manner that protects the *health, safety, and general welfare of the community*.") (emphasis added).

4.      The District has identified no deprivation "of a property interest because of either arbitrary and capricious government action or a denial of fair legal process," *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1290 (3d Cir. 1993), and its due process claims therefore fail.

5.      The District's non-delegation claim fails because the Ordinance makes appropriate policy choices and includes adequate standards which will guide and restrain the exercise of the delegated administrative functions. *See Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*, 161 A.3d 827, 833-34 (Pa. 2017).

WHEREFORE, Intervenors respectfully requests that this Court enter judgment in their favor.

Respectfully submitted,

By:  */s/ Daniel Urevick-Ackelsberg*
Daniel Urevick-Ackelsberg (Bar No. 307758)
Sarah Kang (Bar No. 207432)
Caroline Ramsey (Bar No. 329160)
PUBLIC INTEREST LAW CENTER
2 Penn Center
1500 JFK Blvd., Suite 802
Philadelphia, PA 19102
Telephone:  (215) 627-7100

*Attorneys for Intervenors*

Date: March 16, 2023

16