**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE SCHOOL DISTRICT OF** | : | **CIVIL ACTION** |
| **PHILADELPHIA,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **NO. 23-0238** |
| **THE CITY OF PHILADELPHIA AND** | : | |
| **MANAGING DIRECTOR TUMAR** | : | |
| **ALEXANDER,** | : | |
| **Defendants.** | : | |

## <u>DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>

Jerry R. DeSiderato (Pa. Id. No. 201097)
Timothy J. Ford (Pa. Id. No. 325290)
Danielle M. Karcich (Pa. Id. No. 312049)
**DILWORTH PAXSON LLP**
1500 Market Street, Suite 3500E
Philadelphia, PA 19102

*Counsel for Defendants, the City of
Philadelphia and Managing Director Tumar
Alexander*

Renee M. Garcia (Pa. Id. No. 315622)
Chair, Litigation
Benjamin H. Field (Pa. Id. No. 204569)
Chief Deputy City Solicitor
Ryan B. Smith (Pa. Id. No. 324643)
Assistant City Solicitor
**CITY OF PHILADELPHIA
LAW DEPARTMENT**
One Parkway Building, 15th Floor
1515 Arch Street
Philadelphia, PA 19102

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................................ 1

II.   RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................. 3

III.  LEGAL ARGUMENT ......................................................................................................... 5

  A.   Standard of Review ......................................................................................................... 5

  B.   The District's Claims Against the City Should Be Dismissed .......................................... 6

     1.   The District Fails to State a Claim for Conflict Preemption............................................ 6

     2.   The District Fails to State a Claim for a Violation of the Non-Delegation Doctrine ...... 8

     3.   The District Fails to State a Claim for a Due Process Violation ................................... 13

     4.   The District Fails to State a Claim for the Unlawful Regulation of Public Schools ..... 16

     5.   The District Fails to State a Claim for Violation of Either the Federal or State Equal Protection Clause. ....................................................................................................... 20

     6.   The District Fails to State a Claim for Violation of the Pennsylvania Constitution's Education Clause. ......................................................................................................... 23

     7.   The District Is Not Entitled to a Declaratory Judgment ................................................ 25

     8.   The District Is Not Entitled to an Injunction ................................................................. 26

  C.   The   District   Has   Failed   to   State   Any   Claims   Against   Individual Defendant, Tumar Alexander............................................................................................. 27

     1.   Plaintiff Has Failed to Allege That Individual Defendant, Tumar Alexander, Was Personally Involved in Any Alleged Constitutional Violation...................................... 27

     2.   Individual Defendant, Tumar Alexander, Is Entitled to Qualified Immunity................ 28

IV.  CONCLUSION................................................................................................................. 29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aponte v. Pottstown Sch. Dist.*,
No. 18-3199, 2019 WL 3080938 (E.D. Pa. July 12, 2019) ................................................21, 22

*Arizona v. United States*,
567 U.S. 387 (2012)..................................................................................................................7

*Ashcroft v. al-Kidd*,
563 U.S. 731 (2011)................................................................................................................29

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................................6, 9

*Assoc. Builders & Contractors, Eastern Pa. Chapter, Inc. v. Cnty. of Northampton*,
376 F. Supp. 3d 476 (E.D. Pa. 2019) .....................................................................................23

*Baraka v. McGreevey*,
481 F.3d 187 (3d Cir. 2007).....................................................................................................28

*Boutilier v. Immigration & Naturalization Serv.*,
387 U.S. 118 (1967)................................................................................................................15

*Buck v. Hampton Twp. Sch. Dist.*,
452 F.3d 256 (3d Cir. 2006)........................................................................................6, 18, 19

*Chavarriago v. N.J. Dep't of Corrs.*,
806 F.3d 210 (3d Cir. 2015)....................................................................................................28

*City of Lancaster v. Pennsylvania Pub. Util. Comm'n*,
284 A.3d 522 (Pa. Commw. Ct. 2022) ...................................................................................11

*CMR D.N. Corp. v. City of Philadelphia*,
703 F.3d 612 (3d Cir. 2013)...............................................................................................14, 15

*Dailey v. City of Philadelphia*,
417 F. Supp. 3d 597 (E.D. Pa. 2019), *aff'd*, 819 F. App'x 71 (3d Cir. 2020) .........................14

*Driscoll v. Corbett*,
69 A.3d 197 (Pa. 2013)...........................................................................................................22

*Eagle Envtl. II, L.P. v. Com., Dep't of Envtl. Prot.*,
884 A.2d 867 (Pa. 2005). .................................................................................................12, 13

ii

*Farina v. Nokia, Inc.*,
  625 F.3d 97 (3d Cir. 2010)..............................................................................................8

*FCC v. Beach Commc'ns Inc.*,
  508 U.S. 307 (1993)......................................................................................................23

*Fla. Lime & Avocado Growers, Inc. v. Paul*,
  373 U.S. 132 (1963)........................................................................................................7

*Fowler v. UPMC Shadyside*,
  578 F.3d 203 (3d Cir. 2009)........................................................................................6, 9

*Frank's GMC Truck Center, Inc. v. G.M.C.*,
  847 F.2d 100 (3d Cir. 1988)..........................................................................................27

*Hazleton Area Sch. Dist. v. Zoning Hearing Bd.*,
  778 A.2d 1208 (Pa. 2001) .............................................................................................19

*Heffner v. Murphy*,
  745 F.3d 56 (3d Cir. 2014)............................................................................................14

*Heller v. Doe*,
  509 U.S. 312 (1993)......................................................................................................23

*Highway Materials, Inc. v. Whitemarsh Twp.*,
  386 F. App'x 251 (3d Cir. 2010) ...................................................................................23

*Hill v. Borough of Kutztown*,
  455 F.3d 225 (3d Cir. 2006)..........................................................................................21

*Hines v. Davidowitz*,
  312 U.S. 52 (1941)...........................................................................................................7

*Instant Air Freight Co. v. C.F. Air Freight, Inc.*,
  882 F.2d 797 (3d Cir. 1989)..........................................................................................27

*James Luterbach Const. Co. v. Adamkus*,
  781 F.2d 599 (7th Cir. 1986) .........................................................................................27

*Kedra v. Shroeter*,
  876 F.3d 424 (3d Cir. 2017)..........................................................................................29

*Kelly v. Borough of Carlisle*,
  622 F.3d 248 (3d Cir. 2010)..........................................................................................29

*Marcavage v. Nat'l Park Serv.*,
  666 F.3d 856 (3d Cir. 2012)..........................................................................................21

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)......................................................................................................26

*Mills v. City of Philadelphia*,
　No. CV 21-273, 2022 WL 4389518 (E.D. Pa. Sept. 22, 2022) .........................................25, 26

*N.J. Carpenters v. Tishman Constr. Corp. of N.J.*,
　760 F.3d 297 (3d Cir. 2014)........................................................................................................6

*Nutter v. Dougherty*,
　938 A.2d 401 (Pa. 2007) ........................................................................................................9, 10

*Oliveira v. Twp. of Irvington*,
　41 F. App'x 555 (3d Cir. 2002) ...............................................................................................21

*Pa. Int'l Acad., LLC v. Fort LeBoeuf Sch. Dist.*,
　725 F. App'x 91 (3d Cir. 2018) ..............................................................................................7, 8

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*,
　998 F.2d 1192 (3d Cir. 1993)......................................................................................................6

*PG Pub. Co. v. Aichele*,
　705 F.3d 91 (3d Cir. 2013)........................................................................................................21

*Pic-A-State Pa. Inc. v. Reno*,
　76 F.3d 1294 (3d Cir. 1996)......................................................................................................26

*Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*,
　161 A.3d 827 (Pa. 2017) ...........................................................................................................11

*Reichle v. Howards*,
　566 U.S. 658 (2012)...................................................................................................................29

*Republican Party of Pa. v. Cortes*,
　218 F. Supp. 3d 396 (E.D. Pa. 2016) .......................................................................................22

*Robinson Twp. v. Commonwealth*,
　83 A.3d 901 (Pa. 2013) ...............................................................................................................7

*Rode v. Dellarciprete*,
　845 F.2d 1195 (3d Cir. 1988)....................................................................................................28

*Ryan v. City of Philadelphia*,
　465 A.2d 1092 (Pa. Commw. Ct. 1983) ...................................................................................19

*Sch. Dist. of Philadelphia v. Zoning Bd. of Adjustment, City of Philadelphia*,
　207 A.2d 864 (Pa. 1965) ..................................................................................................*passim*

*Sherwin-Williams Company v. County of Delaware, Pennsylvania*,
　968 F.3d 264 (3d Cir. 2020)......................................................................................................25

*Spady v. Bethlehem Area Sch. Dist.*,
　800 F.3d 633 (3d Cir. 2015)......................................................................................................29

*Startzell v. City of Philadelphia*,
    533 F.3d 183 (3d Cir. 2008).............................................................................................22

*Sykes v. Carroll*,
    477 F. App'x 861 (3d Cir. 2012) ..................................................................................28

*Travelers Ins. Co. v. Obusek*,
    72 F.3d 1148 (3d Cir. 1995)..........................................................................................26

*Tria WS LLC v. Am. Auto. Ins. Co.*,
    530 F. Supp. 3d 533 (E.D. Pa. 2021), *appeal docketed at* No. 21-1741 (3d Cir.
    Apr. 16, 2021) ..................................................................................................................6

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982)................................................................................................14, 15

*Vill. of Willowbrook v. Olech*,
    528 U.S. 562 (2000) (per curiam)..................................................................................21

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008)......................................................................................................14

*William Penn Parking Garage, Inc. v. City of Pittsburgh*,
    346 A.2d 269 (Pa. 1975) ...............................................................................................11

*William Penn Sch. Dist. v. Pa. Dep't of Educ.*,
    170 A.3d 414 (Pa. 2017)................................................................................................25

*William Penn Sch. Dist. v. Pa. Dep't of Educ.*,
    No. 587 MD 2014, 2023 WL 1990723 (Pa. Commw. Ct. Feb. 7, 2023)........................24

*Wilton v. Seven Falls Co.*,
    515 U.S. 277 (1995)......................................................................................................25

*Wolf v. Scarnati*,
    233 A.3d 679 (Pa. 2020), *superseded by constitutional amendment on other
    grounds as recognized in Corman v. Acting Sec'y of Pa. Dep't of Health*, 266
    A.3d 452 (Pa. 2021) ......................................................................................................10

*Wyatt, Virgin Islands, Inc. v. Gov't of V.I.*,
    385 F.3d 801 (3d Cir. 2004)..........................................................................................26

*Wyeth v. Levine*,
    555 U.S. 555 (2009)........................................................................................................8

**Statutes**

Solid Waste Management Act, 35 P.S. §§ 6018.101 *et seq.*...........................................12

35 P.S. § 6018.102 ...........................................................................................................13

53 Pa. C.S. § 2961.........................................................................................................................9

Municipal Waste Management Planning, Recycling and Waste Reduction Act, 53
P.S. §§ 4000.101 *et seq.*..........................................................................................................12

53 P.S. § 4000.102.....................................................................................................................13

53 P.S. § 13133 ..........................................................................................................................18

53 P.S. § 13219(a)(2) ............................................................................................................5, 17

53 P.S. § 14751 ....................................................................................................................17, 19

53 P.S. § 14752 ..........................................................................................................................17

65 P.S. §§ 2101 *et seq.*.............................................................................................................11

Asbestos Hazard Emergency Response Act, 15 U.S.C. §§ 2641–56. ................................... *passim*

Declaratory Judgment Act, 28 U.S.C. § 2201............................................................................25

Philadelphia Building Construction and Occupancy Code, Phila. Code § 4-A-703. ............ *passim*

Philadelphia Building Construction and Occupancy Code, Phila. Code § 4-A-801 .....................16

Philadelphia Building Construction and Occupancy Code, Phila. Code § 4-A-802 .....................16

Philadelphia Health Code, Phila. Code § 6-604(2)......................................................................12

**Other Authorities**

40 C.F.R. § 763.84.......................................................................................................................9

40 C.F.R. § 763.88.......................................................................................................................9

40 C.F.R. § 763.90.......................................................................................................................9

40 C.F.R. § 763.93(g) ................................................................................................................23

25 Pa. Code § 273.101 ...............................................................................................................12

25 Pa. Code § 288.101 ...............................................................................................................12

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 6, 29

Fed. R. Civ. P. 65(a)(2)..............................................................................................................27

Pa. Const. art. III, § 14 ...............................................................................................3, 5, 24, 25

Pa. Const. art. IX, § 2 ..................................................................................................................9

David Schleicher & Roderick Maltman Hills, *Local Legislatures and Delegation*
    (Feb. 23, 2023), Texas L. Rev., Forthcoming,
    https://ssrn.com/abstract=4368382 ..........................................................................................11

U.S. Const. amend. XIV, § 1 ........................................................................................................14

U.S. Const. amend. XIV, § 1. ............................................................................................21, 22, 24

## I.    INTRODUCTION

In its First Amended Complaint, the District does little to address the legal deficiencies the City identified in its initial motion to dismiss, opting instead to double down on its meritless challenges to the City's efforts to provide much needed asbestos oversight. The District's choice to amend its complaint rather than respond to the City's motion to dismiss only delays the resolution of this litigation. But while the District litigates, its publicly available asbestos inspection reports and recent school closures due to asbestos fiber release events illustrate the District's ongoing failure to administer an effective asbestos monitoring and remediation program. City oversight is something the District desperately needs, but nonetheless seeks to avoid. Because the new counts—like the old counts—fail to state a claim upon which relief may be granted, the City requests that this Court grant its Motion to Dismiss the Amended Complaint and dismiss all claims with prejudice.

The District's Amended Complaint concerns Section 4-A-703 of the Philadelphia Code (the "Ordinance"), which contains inspection requirements for basic property-related hazards, such as fire, lead paint, and water safety, in school buildings owned or operated by an entity to which the City provides substantial public funding. While the District does not contest and has never contested these longstanding requirements for other safety concerns such as fire safety and lead paint, this suit challenges a 2022 amendment which added asbestos inspection requirements. The City amended Section 4-A-703 because of concerns over the presence of asbestos in such school buildings and "to enhance building safety requirements for educational occupancies." Section 4-A-703 allows the District a six-month grace period for new best practices and sets forth a three-year timeline for the District to inspect all required facilities.

Notwithstanding the timelines incorporated in the Ordinance, the District has advanced a number of unfounded and unripe constitutional challenges, alleging that Section 4-A-703: (1) is

1

preempted by federal asbestos legislation; (2) violates the non-delegation doctrine; (3) violates the District's due process rights; and (4) is an impermissible regulation of public schools by the City. The Amended Complaint adds on two more similarly unfounded claims, that Section 4-A-703 violates: (5) federal and state equal protection principles; and (6) the Pennsylvania Constitution's education clause.

The District's Amended Complaint, including its new equal protection and education clause claims, fails to address the deficiencies raised in the City's initial motion to dismiss. First, the District's citations to the Asbestos Hazard Emergency Response Act ("AHERA") and its implementing regulations only highlight that Section 4-A-703 does not conflict with federal law. Second, the non-delegation doctrine is not applicable to the City and Section 4-A-703 is well within state constitutional limits for the separation of powers. Third, the Ordinance cannot violate the District's due process rights because the Ordinance points to existing best practices and regulatory certification regimes, allows a six-month period after the Managing Director identifies any additional best practices, and provides an appeal process if a certificate is refused after an inspection. The Ordinance, which was enacted for public health and safety concerns—a core function of City government—is a permissible regulation of public school buildings and not an impermissible regulation of public education. There are no entities similarly situated to the District and, even if there were, the Ordinance rationally treats the District differently than other entities in the City because: (i) the City provides significant, purely discretionary funding to the District on an annual basis; (ii) the District is unique in the City as an education provider; and (iii) all asbestos inspection and remediation is subject to oversight by the City's Department of Public Health, and no other entity has long-term, widespread deficiencies in its asbestos management programs causing a danger to public health like the District. Finally, the District's addition of a

claim under the Pennsylvania Constitution's education clause is curious.  There is no case law supporting a cause of action against the City on any theory related to the education clause because, as the District acknowledges in its Amended Complaint, the clause requires the *Pennsylvania General Assembly* to provide adequate funding for public education.

For the reasons set forth more fully below, the District's claims fail as a matter of law and the Amended Complaint should be dismissed with prejudice.

## II.    RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Section 4-A-703 of the Philadelphia Administrative Code was first enacted in 2003 and was amended in January 2019 to require that each District school building submit a "Certificate of Special Inspection" (the "Certificate") from the City every year certifying that the building has been inspected for "fire, safety, electrical, lead paint, water quality, and all other property-related hazards."  (Am. Compl., ¶ 36, ECF No. 27; Phila. Code § 4-A-703).  The Certificate was to be obtained within the nine-month period immediately preceding the school year for which the Certificate would be valid.  (*Id.*)  In 2022, the City passed a bill amending Section 4-A-703 (the "Bill") to require the Certificate to include a certification of compliance with a new Section 4-A-703.2(4)(E) (the "Ordinance"), which specifically addresses asbestos.  (Am. Compl. ¶ 37; Bill No. 210685-AA at 1 (approved June 1, 2022), attached as **Exhibit A**).  The Ordinance was enacted to protect the health and safety of children attending District schools by "*enhanc[ing]* building safety requirements for educational occupancies."  (Ex. A (emphasis added)).  Section 4-A-703 now requires that "[t]he Department shall not issue a special certificate of inspection unless the building has been inspected for fire, safety, electrical, lead paint, water quality, *asbestos*, and all other property-related hazards" and that:

> the Health Department or a testing agency certified by the Pennsylvania Department of Labor and Industry has certified, within the previous three years and four months, that the building is in substantial compliance with the best practices

3

for testing, remediation, abatement, cleaning, and management of asbestos, and other property-related hazards not otherwise regulated in this Section as identified by the Managing Director no less than six months prior to the issuance of the special certificate of inspection.

(Phila. Code § 4-A-703.2(4)(E) (emphasis added); Am. Compl., ¶¶ 37–38). The Ordinance requires compliance in phases for the first three years, becoming effective on and after August 1, 2023, for one-third of District schools (approximately 100) and becoming effective for the remaining two-thirds of District schools on and after August 1, 2024, and August 1, 2025. (Ex. A § 2; Am. Compl., ¶¶ 50, 53). Thereafter, schools must be re-inspected every three years and four months. Phila. Code § 4-A-703.2(4)(E).

In its April 4, 2023, Amended Complaint, the District brings a number of constitutional challenges to the Ordinance. First, the District alleges that the Ordinance is federally preempted by AHERA, 15 U.S.C. §§ 2641 *et seq*. (Count I). AHERA generally requires school districts to inspect their buildings for asbestos containing building materials ("ACBMs") every three years and to document those inspections in writing, and in the District's view, the Ordinance creates an "irreconcilable conflict" with its AHERA compliance program. Second, the District alleges that the City has not been delegated the authority from the General Assembly to implement asbestos and environmental management procedures for the District (Count II). Third, the District brings a due process claim, alleging that the Ordinance is vague and ambiguous because it does not provide the District with adequate guidance to comply with the new standards contained therein (Count III). Fourth, the District brings a claim for the unlawful regulation of public schools, alleging that 53 P.S. § 13219(a)(2) prevents the City from "regulating public education" and that the City's establishment of asbestos-related inspection requirements in the Ordinance is an impermissible regulation of public education (Count IV). Fifth, the District adds a new claim that the Ordinance violates federal and state equal protection principles by allegedly treating the

District differently than similarly situated entities (Count V).  Sixth, the District adds another new claim that the City's Ordinance somehow violates the General Assembly's obligation to provide for public education in the Pennsylvania Constitution's education clause (Count VI). The District has also sought a declaratory judgment (Count VII) declaring that the Bill is unconstitutional, void, and unenforceable, as well as including a count seeking an injunction (Count VIII) enjoining the City from enforcement of the Ordinance, although the District has not, at this time, filed a motion for a preliminary injunction.

## III.    LEGAL ARGUMENT

### A.    Standard of Review

To withstand a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "All factual allegations in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff," *Tria WS LLC v. Am. Auto. Ins. Co.*, 530 F. Supp. 3d 533, 537 (E.D. Pa. 2021), *appeal docketed at* No. 21-1741 (3d Cir. Apr. 16, 2021) (quoting *N.J. Carpenters v. Tishman Constr. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014)), but the Court "may disregard any legal conclusions" in evaluating "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief,'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citation omitted).  "When deciding a motion to dismiss, courts may consider 'allegations contained in the complaint, exhibits attached to the complaint and matters of public record,'" *Tria WS LLC*, 530 F. Supp. 3d at 537 (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)), and "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] items appearing in the record of the case," *id.* (quoting *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir.

2006)).

## B.      The District's Claims Against the City Should Be Dismissed

### 1.      The District Fails to State a Claim for Conflict Preemption

In Count I of the Complaint, the District alleges that the Ordinance impermissibly conflicts with AHERA and its associated regulations and is therefore preempted.  The District's claim fails as a matter of law because nothing in AHERA would prevent the District from also complying with the City's Ordinance—nor has the District alleged as much.

As an initial matter, the District's preemption claim fails because AHERA contains an express "no preemption" provision and specifically contemplates that states might enact their own legislation with respect to asbestos and the safety of school buildings.  AHERA provides in relevant part that "[n]othing in this subchapter shall be construed, interpreted, or applied to preempt, displace, or supplant any other State or Federal law, whether statutory or common."  15 U.S.C. § 2649(a).  AHERA also expressly allows states to establish more stringent requirements than those contained in AHERA: "Nothing in this subchapter shall be construed or interpreted as preempting a State from establishing any additional liability or more stringent requirements with respect to asbestos in school buildings within such State."[1]  *Id.* § 2649(c).

Even if the Court were to conduct a conflict preemption analysis despite the above provisions, the District's claim fails.  Conflict preemption occurs where "compliance with both federal and state regulations is a physical impossibility," or "where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Pa. Int'l Acad., LLC v. Fort LeBoeuf Sch. Dist.*, 725 F. App'x 91, 94–95 (3d Cir. 2018)

---

[1] The Ordinance is akin to a state regulation for purposes of AHERA.  Municipalities, like Philadelphia, are "creations of the state" with those powers "expressly granted to them by the Constitution of the Commonwealth or by the General Assembly, and other authority implicitly necessary to carry into effect those express powers."  *Robinson Twp. v. Commonwealth*, 83 A.3d 901, 977 (Pa. 2013) (cleaned up).

(internal quotations omitted) (citing *Arizona v. United States*, 567 U.S. 387, 399 (2012); *Fla. Lime*

*& Avocado Growers, Inc. v. Paul*, 373 U.S. 132 (1963); and *Hines v. Davidowitz*, 312 U.S. 52, 67

(1941)).  The preemption analysis is governed by two principles:

> First, the purpose of Congress is the ultimate touchstone in every pre-emption case.
> Second, [i]n all pre-emption cases, and particularly in those in which Congress has
> legislated . . . in a field which the States have traditionally occupied . . . we start
> with the assumption that the historic police powers of the States were not to be
> superseded by the Federal Act unless that was the clear and manifest purpose of
> Congress.

*Wyeth v. Levine*, 555 U.S. 555, 565 (2009) (internal quotations and citations omitted).   In

determining whether state law presents an "obstacle" to the federal objectives, courts look to the

expressly stated purpose of the federal law.   *Farina v. Nokia, Inc.*, 625 F.3d 97, 124 (3d Cir. 2010).

The "expressly stated purposes" of AHERA and the Ordinance are not in conflict with one

another.  Both pieces of legislation seek to create safe, asbestos-free school buildings.  The stated

purposes of AHERA are as follows:

> (1) to provide for the establishment of Federal regulations which require inspection
> for asbestos-containing material and implementation of appropriate response
> actions with respect to asbestos-containing material in the Nation's schools in a safe
> and complete manner;
>
> (2) to mandate safe and complete periodic reinspection of school buildings
> following response actions, where appropriate; and
>
> (3) to require the Administrator to conduct a study to find out the extent of the
> danger to human health posed by asbestos in public and commercial buildings and
> the means to respond to any such danger.

15 U.S.C. § 2641(b).  Similarly, the stated purpose of the Ordinance is to "enhance building safety

requirements for educational occupancies."  Ex. A.  There simply is no conflict.

To the extent the District bases its claim on regulations that the City has or may enact, as

discussed above, AHERA expressly permits the City to enact regulations regarding inspections for

asbestos in school buildings, and further, to enact regulations that might be more stringent than

those contained in AHERA.  Moreover, the District has failed to allege a single provision of the Ordinance that conflicts with any part of AHERA such that the Ordinance would be "an obstacle to the accomplishment and execution of the full purposes and objectives" of AHERA.  *See Pa. Int'l Acad.*, 725 F. App'x at 95.  Count I contains nothing more than the conclusory allegation that the Bill and the Ordinance "create irreconcilable conflicts with the District's AHERA compliance program" (Am. Compl., ¶ 63).  But the District's "AHERA compliance program" is not law that would preempt the Ordinance and the District has not actually alleged any facts identifying the parts of AHERA with which the Ordinance conflicts.  Moreover, although the District alleges that the Ordinance is in conflict with AHERA's associated regulations—40 C.F.R. §§ 763.84, 763.88, and/or 763.90(g)—the District has also not alleged any facts identifying how the Ordinance conflicts with these regulations.  The District's "legal conclusions" may be disregarded and are insufficient to state a claim.  *See Fowler*, 578 F.3d at 210–11 (citing *Iqbal*, 556 U.S. at 678–79).

AHERA expressly contradicts the District's preemption claim.  There is no conflict between the Ordinance and AHERA.  And the District has not alleged facts sufficient to support an inference, much less a conclusion, that the Ordinance conflicts with AHERA.  The Court should dismiss Count I of the Amended Complaint with prejudice.

      2.      <u>The District Fails to State a Claim for a Violation of the Non-Delegation Doctrine</u>

In Count II, the District alleges that the City, the Department of Public Health, and the Managing Director have not been delegated the authority from the General Assembly to implement asbestos and environmental regulations.  This claim fails because (1) the Ordinance at issue here is well within state constitutional and statutory restraints on a Home Rule City of the First Class and (2) in any event, the non-delegation doctrine is inapplicable to the issues raised by the District.

As an initial matter, the non-delegation doctrine is inapplicable to the City.  Philadelphia

is a Home Rule City which is expressly empowered by the Constitution and the General Assembly to legislate matters of local concern with the force of law. *See Nutter v. Dougherty*, 938 A.2d 401, 411 (Pa. 2007); *see also* Pa. Const. art. IX § 2; 53 Pa. C.S. § 2961. "[U]nder the concept of home rule," a city may "legislate concerning municipal governance without express statutory warrant for each new ordinance, . . . limited only by its home rule charter, the Pennsylvania Constitution, and the General Assembly." *Nutter*, 938 A.2d at 411 (citation omitted); *see also* Pa. Const. art. IX § 2; 53 Pa. C.S. § 2961 (providing that a home rule municipality "may exercise any powers and perform any function not denied by the Constitution of Pennsylvania, by statute or by its home rule charter"). The City does not need an express statutory warrant for each new piece of legislation it enacts, and thus the City did not need a warrant from the General Assembly to enact the Ordinance and legislate with respect to asbestos in public school buildings. *See id.*

Accordingly, the District's non-delegation argument is inapplicable here. The non-delegation doctrine concerns the separation of powers and "forbids entities other than the legislative branch from exercising the 'legislative power,' as those entities do not have the power to make law." *Wolf v. Scarnati*, 233 A.3d 679, 704 (Pa. 2020) (citation omitted), *superseded by constitutional amendment on other grounds as recognized in Corman v. Acting Sec'y of Pa. Dep't of Health*, 266 A.3d 452, 457–58 (Pa. 2021). There is no separation of powers concern here. Indeed, there is not even an allegation that the executive branch is exercising the authority of the legislative branch. Count II appears to be predicated on the idea that the state has not authorized the City to legislate about asbestos in school buildings, but even if that were the case (it is not), that does not form the basis of a non-delegation claim.

That Count II fails as a matter of law is underscored by the fact that there is no claim that the City's non-asbestos-related efforts to address the health and safety in schools about issues

9

ranging from lead paint to fire safety are impermissible. Nor would such a claim make sense; the entirety of the challenged Ordinance falls squarely within the authority of the Home Rule City of the First Class to regulate for public health and safety.

Even if nondelegation principles were to apply to the *City's* legislative and executive powers (which they do not), the City's legislative body made the basic policy choices and set adequate standards to guide the executive implementation of the Ordinance. This Court need not even reach the question of how or if the nondelegation doctrine applies to the actions of City Council because the Ordinance cannot be said to impermissibly delegate authority even under the District's theory, which is predicated on the nondelegation doctrine as applied to the Commonwealth's legislature. Delegation, in the manner allegedly presented by the Ordinance, is permissible where (1) the basic policy choices are still made by the Legislature; and (2) the legislation in question contains adequate standards to guide and restrain the exercise of the delegated administrative functions. *City of Lancaster v. Pennsylvania Pub. Util. Comm'n*, 284 A.3d 522, 528 (Pa. Commw. Ct. 2022) (citing *Protz v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*, 161 A.3d 827, 833–34 (Pa. 2017)).[2] This "does not require that all of the details needed to administer a law be precisely or separately enumerated in the statute." *Id.* at 544; *see also William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269, 293 (Pa. 1975) (to constitute an adequate standard under the delegation doctrine, the standard itself need "not be definite or precise"). Moreover, the "standards that control a non-legislative party's exercise of rulemaking authority must be viewed in light of the task necessary to accomplish the [legislative body's] purpose." *Id.*

---

[2] *But see* David N. Schleicher & Roderick M. Hills, Jr., *Local Legislatures and Delegation*, Texas L. Rev., forthcoming (Feb. 23, 2023), at 5, https://papers.ssrn.com/sol3/papers.cfm?abstract_id=4368382 (arguing that there is no "textual or doctrinal explanation for the origins and extent of limits on local legislative delegations," and that "courts should abandon the local [as opposed to the state-level] nondelegation doctrine.").

Any alleged delegation of authority by City Council to the Managing Director that the District purports to challenge is clearly outlined in the Philadelphia Code and meets the requirements of the doctrine. The Bill expressly states the purpose of the Ordinance, which is to "enhance building safety requirements for educational occupancies." Ex. A. And as to asbestos inspections it provides specific guidance by requiring certification by "the Health Department or a testing agency certified by the Pennsylvania Department of Labor and Industry" within the previous three years based on "best practices for testing, remediation, abatement, cleaning, and management of asbestos." Phila. Code § 4-A-703.2(4)(E). The District has already pointed to the extensive practices present in AHERA. The Commonwealth, too, has asbestos standards and an inspector certification process. 65 P.S. §§ 2101 *et seq.* And the City also certifies asbestos inspectors. Phila. Code § 6-604(2). The Ordinance reflects the policy choices of City Council and contains adequate standards and restraining the exercise of alleged delegated authority regarding asbestos inspections.

Further, any argument that the Ordinance provides insufficient guidance to the Managing Director for the promulgation of best practices for asbestos inspection also fails because both the purpose and the references to asbestos inspection regimes serve as a guide to the Department of Health and the Managing Director in developing the "best practices" referred to in the Ordinance. On top of this, the Legislature provided specificity as to the "Facility Safety and Improvement Group," that is to provide the Managing Director with advice regarding best practices and ensured that the Group is to include, among others, an expert on environmental testing and abatement. *See* Phila. Code § 4-A-703.2(4)(F). Thus, the system established by the Ordinance does not violate any doctrine.

Pennsylvania courts have held that an agency can set *specific* rules and regulations to effect

*general* policy choices by the Legislature.  For example, the Pennsylvania General Assembly delegated authority to the Environmental Quality Board to regulate landfills under the Solid Waste Management Act, 35 P.S. §§ 6018.101 *et seq.*, and the Municipal Waste Management Planning, Recycling and Waste Reduction Act, 53 P.S. §§ 4000.101 *et seq. Eagle Envtl. II, L.P. v. Com., Dep't of Envtl. Prot.*, 884 A.2d 867 (Pa. 2005).  The EQB promulgated regulations that required landfill operators to complete an application process demonstrating that the benefits of a landfill project outweighed potential environmental harms.  25 Pa. Code §§ 273.101, 288.101.  A landfill operator challenged the Acts, arguing that they impermissibly delegated a basic policy choice from the General Assembly to the EQB in violation of the non-delegation doctrine because they did not provide primary standards for the EQB to adopt regulations.  The Pennsylvania Supreme Court concluded that the Acts did not violate the non-delegation doctrine because the General Assembly still made the basic policy decision to "protect the 'safety, health, welfare and property of the public'":

> The legislature made the basic policy decision that, although landfills potentially create significant dangers to the public and the environment, they are nonetheless a public necessity.  Furthermore, the legislature made the basic policy decision to regulate the industry with certain purposes in mind and adopted the [Acts].  The legislature, however, did not set forth the specific rules and regulations to determine how to protect the environment or the public; instead it appropriately delegated those to the EQB . . . the [harms/benefits] regulation satisfies the EQB's duty to establish regulations that protect the "safety, health, welfare and property of the public" as well as the Commonwealth's natural resources from the "public health hazards, environmental pollution, and economic loss" that may result from improper and inadequate solid waste disposal while at the same time insuring the provision of solid waste disposal by private enterprise as needed by the public.

*Id.* at 880–81 (citing 35 P.S. § 6018.102 and 53 P.S. § 4000.102).  In other words, that the stated purposes of the Acts were to protect the "safety, health, welfare and property of the public" and to protect the Commonwealth's natural resources from the "public health hazards, environmental pollution, and economic loss" was sufficient guidance to the EQB to be able develop regulations

for permitting Pennsylvania landfills.  Here, too, City Council has made the policy choice to "enhance building safety requirements for educational occupancies."  Ex. A.  Under Pennsylvania law, City Council has provided sufficient guidance for the Department of Health and the Managing Director to develop "best practices" to achieve City Council's policy goal.  For these reasons as well, the District cannot allege a violation of the non-delegation doctrine and the Court should dismiss Count II of the Amended Complaint with prejudice.

### 3.    The District Fails to State a Claim for a Due Process Violation

In Count III of the Complaint, the District alleges that the Ordinance violates its due process rights because it is unlawfully vague, sets ambiguous standards regarding the District's management of asbestos because it does not define "best practices" for the management of asbestos, and provides the City with the power to determine which District buildings may be open. (Am. Compl., ¶¶ 74–77).  This facial challenge fails as a matter of law and, in addition, ignores the significant procedural protections provided under law in the event the City were to determine a school building had to be closed.

The Due Process Clause of the Fourteenth Amendment provides that no state "shall . . . deprive any person of life, liberty, or property, without due process of law." *Dailey v. City of Philadelphia*, 417 F. Supp. 3d 597, 616 (E.D. Pa. 2019), *aff'd*, 819 F. App'x 71 (3d Cir. 2020) (quoting U.S. Const. amend. XIV, § 1).  To violate the Due Process Clause for vagueness, a law or regulation must "fail to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited." *CMR D.N. Corp. v. City of Philadelphia*, 703 F.3d 612, 631 (3d Cir. 2013) (citing *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497 (1982)).

There are two different "void for vagueness" challenges: facial or as-applied.  *Id*.  The District has alleged a facial challenge to the Ordinance.  A party asserting a facial challenge to a regulation "must establish that no set of circumstances exists under which the [regulation] would

13

be valid." *Dailey*, 417 F. Supp. 3d at 617 (internal quotations omitted) (citing *Heffner v. Murphy*, 745 F.3d 56, 65 (3d Cir. 2014)). This demanding standard renders a facial challenge "the most difficult challenge to mount successfully." *Id*. at 617 (internal quotations omitted) (citing *Heffner*, 745 F.3d at 65). The Supreme Court disfavors facial challenges because such claims: (1) "often rest on speculation"; (2) "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied"; and (3) "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Id*. (internal quotations omitted) (citing *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008)). Indeed, just because a regulation may contain some ambiguities does not render it impermissibly vague. *CMR D.N. Corp.*, 703 F.3d at 631–32 (citing *Vill. of Hoffman Estates,* 455 U.S. at 502). As the Third Circuit has held in the context of a zoning ordinance, a facial vagueness challenge would require that the ordinance be so vague as to be "no rule or standard at all." *Id*. (finding that the phrase "appropriate in scale, density, character and use for the surrounding community" in a Philadelphia zoning ordinance applicable to commercial development on the Delaware River waterfront was not void for vagueness) (quoting *Boutilier v. Immigration & Naturalization Serv.,* 387 U.S. 118, 123 (1967)).

The Ordinance is clear and provides the District with sufficient guidance for compliance. The Ordinance states that a Certificate will not issue unless:

> the Health Department or a testing agency certified by the Pennsylvania Department of Labor and Industry has certified, within the previous three (3) years and four (4) months, that the building is in substantial compliance with the *best practices* for testing, remediation, abatement, cleaning, and management of asbestos, and other property-related hazards not otherwise regulated in this Section *as identified by the Managing Director* no less than six (6) months prior to the

14

issuance of the special certificate of inspection.

Phila. Code § 4-A-703.2(4)(E) (emphasis added).  The District argues that this violates due process because "best practices" is not defined and therefore it is impossible for the District to be in compliance with the Ordinance.  But the Ordinance points to existing best practices and regulatory certification regimes, and when the Managing Director promulgates new best practices, the Ordinance provides the District with a six-month period for compliance after those practices are identified.  There are no current ambiguities regarding asbestos practices and the Ordinance's preference for regulations will not create future ambiguities that violate due process because the Ordinance provides the District with six months to address best practices identified by the Managing Director along with a rolling timeline for the initial inspection of District buildings under the Ordinance.

In addition, the District's facial challenge is a red-herring because there is an appeal process provided to the District if the City, pursuant to the Ordinance, were to deny any school building a Certificate.  Just as it is not unconstitutionally vague on its face, it also cannot be said to violate due process in an as-applied challenge.  Depending on the reason for the denial, the District may appeal to the Board of Building Standards or the Board of License and Inspection Review ("BLIR").  The Philadelphia Code provides:

> *Any person who is directly aggrieved by the* issuance, transfer, renewal, *refusal*, suspension, revocation or cancellation *of any license* issued pursuant to this code and the technical codes (except licenses issued pursuant to the Property Maintenance Code); *by a refusal of permit* pursuant to this code and the technical codes; *or by any notice, order or other action by the code official as a result of any inspection* pursuant to this code and the technical codes, *shall have the right to appeal* to the appropriate technical board as set forth in Section A-802.1.

Phila. Code § 4-A-801.1 (emphases added) (citing *id.* § 4-A-802.1, providing a table of the specific technical appeal board for subject codes).  And if the reason for the denial of the Certificate does not fall within the ambit of the specified technical boards, the District may appeal to the Board of

License and Inspection Review.  The Code further provides that:

> *Any person who has been denied a hearing before a technical board*; or *who is aggrieved by the* issuance, transfer, renewal, *refusal*, suspension, revocation or cancellation *of any City license which is not listed for appeal to a technical board* in Section A-801.1; or *who is aggrieved by a notice, order or other action of the department relative to this code* or the technical codes which is not listed for appeal to a technical board in Section A-801.1, *shall have the right to appeal to the Board of License and Inspection Review*.

Phila. Code § 4-A-802.1 (emphases added).  Thus, if the City denies a District building a Certificate for non-compliance with the to-be-promulgated asbestos standards or any other provision of Section 4-A-703, the District will receive all the process it is due through the appeals process before a technical board or BLIR.

The District's facial due process challenge fails as a matter of law, and therefore, the Court should dismiss Count III of the Amended Complaint with prejudice.

### 4. The District Fails to State a Claim for the Unlawful Regulation of Public Schools

In Count IV, the District alleges that the Ordinance is an unlawful "regulation of public schools" pursuant to 53 P.S. § 13219(a)(2).  But the Ordinance, which is intended to protect the health and safety of this City's public school children from the deleterious health effects of asbestos, does not regulate public education as defined by the Pennsylvania Supreme Court. Section 13219(a)(2) was intended to prohibit the City from regulating the quality of the education provided in public schools and not from regulating the safety of the school buildings where that education is provided.

The Pennsylvania Supreme Court has defined the parameters in which a municipality can enact legislation that may have an effect on public school buildings, and has explained what is and is not considered to be a "regulation of public schools," specifically examining the question: "Does the City of Philadelphia, under its Home Rule Charter and the Zoning Enabling Act, have the

power to regulate by means of zoning ordinances the construction of public school buildings by

the School District within the City of Philadelphia?"  *See Sch. Dist. of Philadelphia v. Zoning Bd.*

*of Adjustment, City of Philadelphia*, 207 A.2d 864, 865 (Pa. 1965).  In *School District*, the District

had intended on expanding one of its school buildings to accommodate additional students, but the

proposed structure would not comply with existing zoning requirements enacted by the City, and

thus the City denied the District's application for construction permit.  The District applied for a

variance with the Zoning Board, which found that while the school building was a permitted use,

it would violate other zoning criteria and that these violations would increase congestion in the

public streets.  The District appealed to the Court of Common Pleas which concluded that the

District was exempt from all provisions of the City's zoning ordinances.  The Pennsylvania

Supreme Court reversed, finding that the *zoning ordinances, although they had an effect on public*

*school buildings, were not a prohibited regulation of public schools*.

In coming to this conclusion, the Court began by examining the history of the powers

granted to the City by the State Legislature:

> Since the City is a municipal corporation created by the state, it possesses only those powers specifically granted by the legislature . . . . In 1949 . . . the General Assembly passed the 'First Class City Home Rule Act' . . . giving cities of the first class taking advantage of the act, subject to certain limitations, all powers and authority of local self-government, together with complete powers of legislation and administration relative to its municipal functions.  The City of Philadelphia, pursuant to the Act of 1949 . . . adopted a Home Rule Charter on April 17, 1951, effective January 7, 1952.  It was, therefore, empowered to legislate as to municipal functions, subject to certain limitations . . .

*Sch. Dist.*, 207 A.2d at 866–67 (internal citations omitted).  The Court noted that no city may

exercise powers related to the regulation of public schools.  *Id*. at 867 (citing 53 P.S. § 13133).

Relying on this section, as the District does here, the District argued that the Legislature did not

intend the City to interfere with the construction of public school buildings and that such of

function is an integral part of the educational system, the sole administration of which is vested in

17

the District.

The Court disagreed with the District's interpretation of the "regulation of public schools" and found that the imposition of zoning regulations, which are "enacted for the protection of the health, safety and general welfare of the community," requiring off-street parking to avoid traffic congestion, *were not* a regulation of public schools. *Id.* Critically, the Court noted:

> *As we view the term "Regulating public schools," this deals more with the quality of public education than with the physical structures required to provide it.* The building of school buildings is but a necessary incident to the fulfillment of the primary duty to educating the young. Moreover, zoning is peculiarly a local matter and the prohibition imposed on the City by the Act of 1949 against the exercise of powers contrary to, or in limitation of, other acts of the General Assembly applies only to substantive matters of state-wide concern. *We regard statewide interest, and thus the area protected from local interference by statute, to be centered in, for example, the number of hours that children must attend school and the types and emphasis of courses that shall be presented to them.* We see no inherent state-wide interest in the fact that certain school buildings, because of local problems of congestion, should be so situated that space is available for off-street parking, or even that, because of overcrowded conditions, each building should be of only a certain height, or that it should have a back yard of a certain depth. These are areas which the legislature did not intend to protect when it denied to cities the power to regulate public schools. In requiring off-street parking facilities, the City here is not "regulating public schools;" it is merely trying to enforce methods of combating the congestion of its public streets by means which it considers reasonably calculated to accomplish this result. That there is some additional cost to the educational system does not mean ipso facto that there is regulation of schools.

*Id.* at 867–68 (internal citations and quotations omitted) (emphasis added). Lastly, the Court noted that the record contained no indication that the requirement of off-street parking would be in effect a prohibition of the school building when those regulations were necessary for the protection of the health, safety and welfare of the community. *Id.* at 185.

In the wake of the *School District* case, Pennsylvania courts consistently have found that municipalities may regulate the "necessary incidents" of public education. *See Ryan v. City of Philadelphia*, 465 A.2d 1092, 1093 (Pa. Commw. Ct. 1983) (citing *Sch. Dist.*, 417 Pa. 477) (finding that the First Class City Public Education Home Rule Act "does not preclude the City

from regulating the necessary incidents of public education" and that funding school busing is only regulating a "necessary incident" of public education, *i.e.*, the passage of children to and from school); *Hazleton Area Sch. Dist. v. Zoning Hearing Bd.*, 778 A.2d 1208, 1213 (Pa. 2001) (a municipality's prohibition of the non-school use of baseball fields on school property was incidental and non-essential to the school's educational mission).

The Ordinance is a permissible regulation of a "necessary incident" of public education, and is not an impermissible regulation of the public education itself. *See Sch. Dist.*, 207 A.2d at 867–68; *Ryan*, 465 A.2d at 1093; *Hazleton*, 778 A.2d at 1213. Since 2003, the Ordinance has mandated various inspections in public school buildings, including fire safety, water quality, electrical standards, and lead paint. The District has never challenged those inspections as an impermissible regulation of public schools. Only now that the Ordinance has been amended to provide for asbestos inspections does the District assert a regulation of public schools. But the Ordinance in no way regulates the quality of the education provided in the District's schools. It does not mandate the number of hours children must attend school or the courses they must take or anything else that has to do with the actual provision of education to students. *See Sch. Dist.*, 207 A.2d at 868. As it has since its enactment in 2003, the Ordinance seeks to regulate the physical structures in which children attend school. *See id.* at 867–68. Moreover, the Ordinance was expressly "enacted for the protection of the health, safety and general welfare of the community," *see id.* at 867, by "enhanc[ing] building safety requirements for educational occupancies," (Ex. A) and contains no stated purpose to regulate public education.

The District's allegation that the Ordinance will risk the closure of 100 District school buildings by the 2023–2024 school year with the remaining 200 additional school buildings "slated for possible closure by August 2025" (*see* Am. Compl. ¶ 53), does not save their baseless claim.

19

The District does not allege that school buildings *will* close as a result of the Ordinance.  Rather, the District appears to suggest that either: (a) all 300 of its schools would fail inspection, or (b) the District is incapable of inspecting any of its schools for asbestos, which it is already required to do under federal law.  *See* 15 U.S.C. §§ 2641 *et seq*.  But neither of these suggestions warrant the conclusion that the City is regulating education.  In any event, as alleged, the District's suggestion is no more than an unreasonable inference that this Court is not required to credit even on a motion to dismiss. There is no factual allegation in the Complaint which supports the District's conclusion that compliance with the Ordinance risks closure of all 300 of the District's school buildings and, again, health and safety regulations for buildings do not constitute an unlawful regulation of education.

The District fails to sufficiently allege that the Ordinance is an unlawful regulation of public schools, and therefore, the Court should dismiss Count IV of the Amended Complaint with prejudice.

> 5.   The District Fails to State a Claim for Violation of Either the Federal or State Equal Protection Clause.

Count V of the Amended Complaint fails to state a claim that the Ordinance violates equal protection.  As evidenced by the District's factual allegations, differential treatment is not only rational but necessary.  The addition of this count in the Amended Complaint is merely an attempt to prolong this litigation and delay the District's compliance with the Ordinance.  Because the District cannot carry the high burden of alleging a "class of one" equal protection violation, which is subject to rational basis review, this Court should dismiss Count V with prejudice.

The Equal Protection Clause of the Fourteenth Amendment is intended "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted

agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam) (citations omitted). "[T]o establish a prima facie case of discrimination under the Equal Protection Clause," a plaintiff must allege "that they were members of a protected class and that they received different treatment than that received by other similarly-situated individual[s]." *Aponte v. Pottstown Sch. Dist.*, No. 18-3199, 2019 WL 3080938, \*9 (E.D. Pa. July 12, 2019) (quoting *Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002)). "Where a litigant asserts a so-called 'class of one' Equal Protection challenge, alleging that the litigant itself, and not a particular group, was the subject of discriminatory treatment under a particular law," the plaintiff must allege "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *PG Pub. Co. v. Aichele*, 705 F.3d 91, 114 (3d Cir. 2013) (quoting *Marcavage v. Nat'l Park Serv.*, 666 F.3d 856, 860 (3d Cir. 2012)). "[T]o state a claim under that theory, a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment." *Aponte*, 2019 WL 3080938, \*9 (quoting *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006)). The United States and Pennsylvania Constitutions' Equal Protection provisions are coextensive. *Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396, 417 (E.D. Pa. 2016) (citing *Driscoll v. Corbett*, 69 A.3d 197, 209 (Pa. 2013)).

A complaint asserting a class of one theory must contain sufficient factual allegations to "make plausible the *existences* of similarly situated parties." *Aponte*, 2019 WL 3080938 at \*10 (emphasis added). "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'" *Id.* (quoting *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008)). Here, the District's claim fails because it admits that it is different from the "65 charter schools . . . not housed in buildings owned by the District." (Am. Compl., ¶ 98). Indeed,

the City "provides substantial funding" to the District, which it does not provide to the charter schools. (Am. Compl., ¶ 96). And if any of those schools do, in fact, receive "substantial funding" from the City, (*see* Am. Compl., ¶ 43), then they *are* subject to the Ordinance and the District's claim fails even if the charter schools are similarly situated because the District is not treated differently than those similarly situated entities. *See* Ex. A at 1; (Am. Compl., ¶¶ 96, 98).

In addition to funding, the District's Amended Complaint highlights other key differences between it and other entities in the City. The District "owns more than 300 buildings which serve approximately 130,000 students every year." (Am. Compl., ¶ 14). "Of the District's 300 buildings, more than 40 buildings are over 100 years old, and the average age of the buildings is over 65 years old." (*Id.*) Not only does it have hundreds of old buildings, the "District has suffered from decades of systemic underfunding." (*Id.*, ¶ 17). These and other issues have "historically" placed "major strains on the District's ability to keep up with AHERA's rolling three-year cycle of compliance for its approximately 300 buildings." (*Id.*, ¶ 27). Finally, the District's recently published AHREA reports indicate that the District has not been on a three-year inspection cycle.[3] The District has also acknowledged recently that it has previously misidentified materials that were later discovered to contain asbestos.[4]

Even if the District sufficiently alleges the existence of similar entities—which it does not—it must still show that the differential treatment was "irrational and wholly arbitrary." *Highway Materials, Inc. v. Whitemarsh Twp.*, 386 F. App'x 251, 259 (3d Cir. 2010) (citations omitted). The claim fails when "there is any reasonably conceivable state of facts that could

---

[3] Reports available at https://www.philasd.org/capitalprograms/environmental/ahera/ #1574363482548-251469d0-a3f6.

[4] Kristen A. Graham, "More asbestos was 'misidentified' at Building 21, Philly school officials tell parents and teachers," *Phila. Inquirer* (Mar. 28, 2023), https://www.inquirer.com/news/philadelphia/philadelphia-school-district-asbestos-building-21-discovery-20230328.html.

provide a rational basis for the classification."  *Id.* (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)).  "That conceivable state of facts 'is not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data.'"  *Assoc. Builders & Contractors, Eastern Pa. Chapter, Inc. v. Cnty. of Northampton*, 376 F. Supp. 3d 476, 496 (E.D. Pa. 2019) (quoting *FCC v. Beach Commc'ns Inc.*, 508 U.S. 307, 315 (1993)).  And courts are particularly deferential "where the legislature must necessarily engage in a process of line-drawing."  *Beach Commc'ns*, 508 U.S. at 315 (citation omitted).

It is well-established that the health and welfare of its citizenry is a legitimate interest.  *See, e.g., Sch. Dist.*, 207 A.2d at 867, 869–71 (discussing the wide latitude of the City to regulate in the interest of the health, safety, and general welfare).  Here, the Amended Complaint highlights the reasons that the District is not similarly situated to other, non-regulated entities.  And even if it could point to similarly situated entities, the District's unique characteristics, including its substantial, discretionary funding by the City, the number and age of its buildings, its chronic underfunding and "strain" to comply with existing asbestos regulations, including conducting required AHERA inspections off-cycle and misidentifying asbestos-containing materials, constitute legitimate bases to treat the District differently than other entities.

The District fails to sufficiently allege that the Ordinance violates the Equal Protection Clause, and therefore, the Court should dismiss Count V of the Amended Complaint with prejudice.

### 6.    The District Fails to State a Claim for Violation of the Pennsylvania Constitution's Education Clause.

Count VI of the Amended Complaint adds a puzzling and baseless claim for violation of the Pennsylvania Constitution's Education Clause.  The Education Clause imposes no duty or restriction on the City in any regard and the District's assertion that the Ordinance "violates the

fundamental right to public education by failing to properly 'provide for the maintenance and support of a thorough and efficient system of public education'" is nonsensical. (Am. Compl., ¶ 107). The Court should dismiss this Count with prejudice.

The Pennsylvania Constitution provides that the "General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth." Pa. Const. art. III, § 14. Despite the "differing interpretations" of "thorough and efficient", the Clause's text is clear that "it is the General Assembly that is tasked under the Constitution with providing for the maintenance and support of a system of public education." *William Penn Sch. Dist. v. Pa. Dep't of Educ.*, No. 587 MD 2014, 2023 WL 1990723, \*290 (Pa. Commw. Ct. Feb. 7, 2023). Thus, "the Education Clause requires the General Assembly to provide a full or complete system of public education that is effective in producing students who, as adults, can participate in society, academically, socially, and civically, which thus serves the needs of the Commonwealth." *Id.* at \*292.

The City is not under any constitutional obligation to fund the District. The City exercises its discretion to provide the District with additional funding as a matter of good policy and as a stop-gap measure for the General Assembly's historical underfunding of the largest school district in Pennsylvania. It was only in 2017 that the Pennsylvania Supreme Court found that the Education Clause created a cause of action against the Commonwealth—or at all. *William Penn Sch. Dist. v. Pa. Dep't of Educ.*, 170 A.3d 414, 457 (Pa. 2017) (holding that the courts may "give meaning and force to the language of a constitutional mandate," in a suit challenging the inequality of public school funding by the legislature, rather than dismissing the case as a non-justiciable political question). There is no support for the proposition that the Education Clause compels any action or imposes any restriction on the City in any regard.

The District fails to sufficiently allege that the Ordinance violates the Education Clause, and therefore, the Court should dismiss Count VI of the Amended Complaint with prejudice.

### 7.     The District Is Not Entitled to a Declaratory Judgment

None of the District's claims are ripe and, therefore, it is not entitled to a judgment declaring that the Ordinance is unconstitutional, void, and unenforceable.

Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Declaratory Judgment Act is an "enabling act," which means that it confers discretion on the courts rather than an absolute right on a litigant. *Mills v. City of Philadelphia*, No. CV 21-273, 2022 WL 4389518, at \*6 (E.D. Pa. Sept. 22, 2022) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995)). Declaratory judgments are "limited to cases and controversies in the constitutional sense." *Id.* (internal quotations omitted) (citing *Sherwin-Williams Company v. County of Delaware, Pennsylvania*, 968 F.3d 264, 269 (3d Cir. 2020)). And "[a]lthough there is no precise definition as to what constitutes a case or controversy, the facts alleged, under all circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (internal quotations omitted) (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

The ripeness doctrine is interrelated with the issue what constitutes a "case of actual controversy." *Id.* (citing *Wyatt, Virgin Islands, Inc. v. Gov't of V.I.*, 385 F.3d 801, 806 (3d Cir. 2004)). The Third Circuit has described the ripeness doctrine as follows:

> In determining whether a dispute has matured to a point to require judicial adjudication, courts must consider the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. A dispute is not ripe

for judicial determination *if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all. Claims based merely upon assumed potential invasions of rights are not enough to warrant judicial intervention.*

*Id.* (emphasis added) (citing *Wyatt*, 385 F.3d at 806).  To determine whether a claim is ripe, courts examine: (1) the adversity of the interest between the parties; (2) the conclusiveness of the declaratory judgment; and (3) the practical help or utility of the declaratory judgment.  *Id.* (citing *Pic-A-State Pa. Inc. v. Reno*, 76 F.3d 1294, 1298 (3d Cir. 1996)).  In order for a declaratory judgment action to be ripe, all three elements must be present.  *Id.* (citing *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1154 (3d Cir. 1995)).

None of the District's claims are ripe and therefore there is no case or controversy between the District and the City.  The Ordinance requires only inspections every three years and four months. Phila. Code § 4-A-703.2(4)(E).  The Ordinance allows the Managing Director to identify best practices, but gives the District a six-month period before it must comply with the Managing Director's best practices.  To date, no certificate has been issued or denied with respect to asbestos at any school building.  To the extent that the Court is concerned with the enforcement of the ordinance, the District's claims are simply not ripe.

The District fails to allege that it is entitled to a declaratory judgment and the Court should dismiss Count VII of the Amended Complaint with prejudice.

### 8.    The District Is Not Entitled to an Injunction

The District's Complaint also includes a separate count for a "temporary and permanent injunction," even though the District has not filed a separate motion for injunctive relief.  (Am. Compl., ¶ 116). The District is not entitled to separate injunctive relief without making a motion. *See, e.g.*, *James Luterbach Const. Co. v. Adamkus*, 781 F.2d 599, 603 & n.1 (7th Cir. 1986) (explaining that Fed. R. Civ. P. 65(a)(2) contemplates a separate motion for temporary relief and

the plaintiff never separately moved for a preliminary injunction).  And even if the District sought an injunction by way of their Complaint, injunctive relief is "'an extraordinary remedy, which should be granted only in limited circumstances.'"  *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir. 1989) (quoting *Frank's GMC Truck Center, Inc. v. G.M.C.*, 847 F.2d 100, 102 (3d Cir. 1988)).  Such circumstances are not present here, which the City will address—and the Court can evaluate—if the District were to properly seek injunctive relief through motion practice.

The Court should dismiss Count VIII of the Amended Complaint with prejudice.

### C. The District Has Failed to State Any Claims Against Individual Defendant, Tumar Alexander

#### 1. Plaintiff Has Failed to Allege That Individual Defendant, Tumar Alexander, Was Personally Involved in Any Alleged Constitutional Violation

Plaintiff's claims individual claims against Mr. Alexander, the City Managing Director should be dismissed as a matter of law because the Complaint is devoid of any allegation that he personally participated in any purported violation of Plaintiff's constitutional rights.

In the Third Circuit, a "defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable . . . and cannot be held responsible for a constitutional violation which he or she neither participate in nor approved."  *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007); *see Sykes v. Carroll*, 477 F. App'x 861, 863 (3d Cir. 2012) (affirming grant of summary judgment in favor of an individual defendant where plaintiff failed to allege personal involvement).  "Liability cannot be predicated solely on the operation of *respondeat superior*."  *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Therefore, to survive a motion to dismiss, a complaint must plead a defendant's personal involvement, which can be accomplished by alleging "the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct."  *Chavarriago v. N.J. Dep't of Corrs.*, 806 F.3d 210, 222 (3d Cir. 2015).  A

plaintiff "must portray specific conduct by state officials which violates some constitutional right." *Id*. (internal citations and quotations omitted).

The District does not make a single allegation which explains its insistence on suing the Managing Director even as it voluntarily dismissed its claims against the Department of Health. The Complaint is devoid of any allegation whatsoever that the Managing Director personally participated in or had any knowledge of any purported wrongful conduct with respect to the Ordinance. The only allegations against the Managing Director are that the Ordinance vests him with authority to identify "best practices" for the management of asbestos, but there are no allegations with respect to any specific actions taken by the Managing Director. The Managing Director has not yet identified any best practices and the Complaint contains no allegation that he has done so. Thus, as a matter of law, Mr. Alexander cannot be held liable.

          2.    <u>Individual Defendant, Tumar Alexander, Is Entitled to Qualified Immunity</u>

Even assuming that the District had pled specific facts with respect to the Managing Director's personal involvement in an alleged constitutional violation, as a government official, he is also entitled to qualified immunity.

"[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d Cir. 2010) (internal quotations omitted). Qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law." *Spady v. Bethlehem Area Sch. Dist.*, 800 F.3d 633, 637 (3d Cir. 2015) (internal quotations omitted). The court must ask whether the facts alleged show a violation of a constitutional right that was clearly established at the time of the violation. *Kedra v. Shroeter*, 876 F.3d 424, 434 (3d Cir. 2017). A right is clearly established if there is controlling authority in the jurisdiction or a robust "consensus of cases of persuasive

authority." *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011). "[C]ourts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations omitted).

Here, it would be impossible to conclude that the Managing Director knowingly violated any clearly established constitutional right. Because, again, the District has not made any allegations with respect to specific actions taken by the Managing Director. Thus, the Court need not even consider whether there is any controlling case law or "robust consensus" of persuasive authority that would have put the Managing Director on notice that the certification requirements for public school building, which have been in place for years, are now unconstitutional because they include provisions related to asbestos. The District has not alleged any actions taken by Mr. Alexander and he is therefore entitled to qualified immunity.

## IV.   CONCLUSION

For the foregoing reasons, the City respectfully requests that the Court dismiss with prejudice all claims against them in accordance with Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

Date:  April 18, 2023              DILWORTH PAXSON LLP

By:   */s/ Jerry R. DeSiderato*
Jerry R. DeSiderato
PA Id. No.  201097
Timothy J. Ford
Pa. Id. No. 325290
Danielle M. Karcich
Pa. Id. No. 312049
1500 Market Street, Suite 3500E
Philadelphia, PA 19102
Phone: (215) 575-7000
Fax: (215) 575-7200
jdesiderato@dilworthlaw.com
tford@dilworthlaw.com

dkarcich@dilworthlaw.com

CITY OF PHILADELPHIA
LAW DEPARTMENT

*/s/ Renee M. Garcia*
Renee M. Garcia
Chair, Litigation
Pa. Id. No. 315622
Benjamin H. Field
Chief Deputy City Solicitor
Pa. Id. No. 204569
Ryan B. Smith
Assistant City Solicitor
Pa. Id. No. 324643
One Parkway Building, 15th Floor
1515 Arch Street
Philadelphia, PA 19102
Tel. 215.683.5038
Fax 215.683.5299
Renee.Garcia@phila.gov
Benjamin.Field@phila.gov
Ryan.Smith@phila.gov

*Counsel for Defendants, the City of Philadelphia and Managing Director Tumar Alexander*